# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### DECEMBER SESSION, 1997

FILED

March 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9607-CC-00279 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | ANDERSON COUNTY |
| VS. | ) | |
| | ) | HON. JAMES B. SCOTT, JR. |
| GREGORY SCOTT TYREE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Rape) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF ANDERSON COUNTY

FOR THE APPELLANT:

NANCY MEYER
Office of the Public Defender
101 South Main Street, Suite 450
Clinton, TN 37716

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

PETER M. COUGHLAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

JAMES M. RAMSEY
District Attorney General

JAN HICKS
Assistant District Attorney General
127 Anderson County Courthouse
100 S. Main Street
Clinton, TN 37716

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Gregory Scott Tyree, appeals as of right pursuant to Rule 3, Tennessee Rules of Appellate Procedure. He was convicted by a Anderson County jury of aggravated rape and sentenced as a standard, Range I offender to twenty-five years imprisonment. He argues three issues in this appeal: (1) That the trial court erred by introducing evidence of the content of a 1-900 telephone call made from the victim's home; (2) that the trial court misapplied sentence enhancement factors and erred in sentencing the Defendant to twenty-five years; and (3) that the trial court erred by refusing to give pretrial jail credit. We affirm the judgment of the trial court.

In Oak Ridge, Tennessee, at approximately 3:00 a.m. on August 20, 1994, Marie Davis, age 79, was awake, had been in her yard "working" on her pear trees and then had gone back inside her house. The Defendant had been out with friends to the Am-Vets in Harriman, Tennessee, and drank some beer. At around 2:30, the group left and some wanted to go to a Krystal Restaurant for hamburgers, but the Defendant declined. He asked to be dropped off at his mother's house. Shortly thereafter, the Defendant knocked on Mrs. Davis' door and asked to use the telephone. He had been living next door to her with his mother since May, 1994. They had used her telephone on a number of occasions because they did not have their own telephone service. Mrs. Davis was reluctant to let the Defendant in her house that late at night, but he told her that it would only take a few minutes. The Defendant stated that his mother was sick and needed to go to the hospital.

Mrs. Davis said that the Defendant went to the phone in the living room and made a call. The Defendant was just standing there and Mrs. Davis told him to hurry up because she wanted to go to bed. Suddenly, the Defendant turned and grabbed her blouse and bra and tore them off. The Defendant hit her in the head with his fist and choked her. He threw Mrs. Davis down against the couch. The Defendant threatened "I'm going to kill you." The Defendant went to the kitchen and turned off the light. Mrs. Davis attempted to run and the Defendant hit her in the head and she was bleeding. He grabbed her neck and choked her. The Defendant sucked the victim's breast, threatened to chew it off, and bit her breast. Mrs. Davis then felt the Defendant's penis in her vagina. The Defendant later admitted to penetrating the victim with his fingers. Mrs. Davis recalled that the Defendant was wearing black shorts with white buttons. The victim was wearing large, baggy shorts when the rape occurred and, afterwards, there was blood on her underwear. Mrs. Davis blacked out at some point and awakened in the morning. She called her friend, Adele Haun, and her brother-in-law, James Hicks to come over. Mr. Hicks called the police. After the police arrived, the Defendant came to the victim's yard and asked what had happened. A baseball cap was found under the coffee table and the Defendant later admitted that it was his.

Dr. Anthony DiFranco examined the victim at the Oak Ridge Methodist Medical Center. The exam revealed that Mrs. Davis had bruising of the conjunctiva of her eyes, bruising on the left side of her face, and a bruise that went along her neck. She also had a ruptured tympanic membrane, or eardrum, and blood and drainage was visible. These injuries were consistent with her claims of being hit about the head and choked. There were small bite marks on

the left nipple. Mrs. Davis also had a bruise on the back of her left hand. A pelvic examination showed vaginal tears from rabic noire and small intravaginal tears on both side of the vaginal walls. Those tears were consistent with penetration and could result from penile penetration or penetration by fingers. Swabs taken revealed no presence of semen.

The Defendant submitted a written statement on August 20, denying that he was at the victim's home at the time the crime was committed. The next day, the Defendant submitted a statement implicating himself in the crime:

> I, Gregory Scott Tyree, remember going into Marie Davis' home to use the phone. After using the phone, I struck Davis with my hand and only my hand. I do remember touching her sexually with my hand. I'm very sorry for hurting her and would never kill her. I would like some help for the problems that I now, that I, I know I have.

The Defendant was charged with one count of aggravated rape. He was convicted and sentenced to twenty-five years. He now appeals the judgment of the trial court.

I.

As his first issue, the Defendant contends that the trial court committed reversible error by admitting rebuttal testimony regarding a 1-900 call placed from the victim's home. During the investigation of this case, it came to the victim's attention that a telephone call was placed from her residence around 3:30 a.m. on the night of the incident. The victim did not recognize the number nor did she pay the charge of $6.98. Detective Mike Uher called the number, which stated

it was the "Hottest Girls in America." After voice activation, a woman on the line talked to the caller about performing sexual acts.

At trial, the State attempted to admit testimony regarding the call in its case in chief. The victim was unable to identify the telephone bill because she forgot her glasses. Next, the victim's brother-in-law, James Hicks, testified that he was responsible for handling Mrs. Davis' telephone bills every month. He knew who she regularly called and he did not recognize the long distance number. He testified that the charge was $6.98. The trial judge allowed no testimony regarding the content of the call because the telephone bill was not properly authenticated.

The Defendant testified on direct examination that he went to the victim's house with the intent to rob her. He stated that he called a friend in Oliver Springs. On cross-examination, the Defendant denied that he called a 1-900 number for the purpose of sexual arousal. The State offered Detective Uher as a rebuttal witness. Uher testified that the content of the 1-900 number was sexual in nature. The testimony was admitted as probative of the Defendant's intent.

The Defendant argues that the testimony was inadmissible for a variety of reasons. He contends that Uher's testimony about the 1-900 number was hearsay and not admissible under any exception. He also argues that the testimony was not relevant because the trial court had earlier ruled that the telephone bill could not properly be admitted because a reliable foundation could not be established. Finally, the Defendant claims that the testimony could not

properly be admitted to impeach him because it was impermissible extrinsic evidence. He concludes that the evidence was unduly prejudicial, warranting that the verdict be set aside and a new trial granted. The State counters that the evidence was properly admitted as highly probative of the Defendant's intent and even if it was error, it was harmless in light of the overwhelming evidence of the Defendant's guilt.

We cannot agree with the Defendant that any statements made by the 1-900 line to prove that its content was of a sexual nature is impermissible hearsay evidence. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). The State argues that Uher's testimony regarding the "Hottest Girls in America" was not offered for its truth that the line actually offered such "girls" and therefore, such statements were not hearsay. The statements made on the 1-900 line that it had the "Hottest Girls in America" would constitute hearsay if offered to prove the truth of the matter asserted in the statement. Here, the testimony was offered to prove that the line's content was sexual in nature and the declarant, Officer Uher, was available for cross-examination regarding the credibility of his statements. Therefore, we do not believe that the testimony offered was impermissible hearsay.

The record indicates that rather than admitting the testimony for the purposes of impeachment, the trial judge allowed Uher's statement as substantive rebuttal evidence probative of the Defendant's intent. In the case sub judice, defense counsel requested and received a jury-out hearing on the issue. After vigorous and lengthy argument, the trial judge agreed to admit Uher's

-6-

testimony regarding the call as probative of the Defendant's intent to commit the rape. The Defendant had testified that he entered Mrs. Davis' home with the intent to rob her and that robbery motivated his actions. The trial court concluded that the Defendant's intent became a material issue probative of the aggravated rape. However, evidence is only relevant if it has a tendency to assist the trier of fact resolve an issue of fact. See Tenn. R. Evid. 401; Neil P. Cohen, et. al, Tennessee Law of Evidence § 401.3 (3d. ed. 1995). Although the issue is difficult, we do not believe the evidence should have been admitted.

The elements of aggravated rape as charged in this case are that the Defendant unlawfully sexually penetrated the victim and that the Defendant caused bodily injury to the victim. See Tenn. Code Ann. § 39-13-502. The requisite mens rea is that the offense was committed either intentionally, knowingly or recklessly. See Tenn. Code Ann. § 39-11-301(b), (c). The Defendant's intent when he gained entrance to the victim's home or when he made the telephone call is irrelevant to prove the elements of aggravated rape. See State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996); State v. Tizard, 897 S.W.2d 732, 744 (Tenn. Crim. App. 1994). Therefore, the admission of the testimony regarding the nature of the call had little probative value of the elements of the offense for which he was charged. The evidence that a call was made to a "sex line" was clearly prejudicial to the Defendant as it suggests a proclivity for sexual stimulation. Because of the lack of any substantial probative value of the evidence concerning an issue of material fact, we believe it was error to introduce testimony regarding the 1-900 number for the purpose of proving motive or intent. Without adequate substantiation as proof of a material issue, the evidence becomes primarily character evidence used to prove that the

Defendant acted in conformity with a negative character trait. Such evidence is generally inadmissible. See Tenn. R. Evid. 404(b).

Generally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion." Tenn. R. Evid. 404(a). However, specific examples of "other crimes, wrongs, or acts" may be admitted as substantive evidence for other purposes. Tenn. R. Evid. 404(b) (emphasis added). In order to admit such evidence:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b); State v. West, 844 S.W.2d 144, 149 (Tenn. 1992).

Because we conclude that the probative value of the evidence of the telephone call was outweighed by the danger of unfair prejudice, we believe the trial judge erred in admitting the evidence as probative of the Defendant's intent.

Because we have determined that the telephone call was of such limited relevance, we also agree that the testimony, if offered to impeach the Defendant's testimony, was an improper use of extrinsic evidence to impeach the Defendant's statement that he called a friend, and not the 1-900 line. During cross-examination of a witness, counsel may generally challenge the accuracy

of any <u>relevant</u> fact. A court may limit cross-examination about irrelevant facts mentioned during direct examination. <u>See</u> Neil P. Cohen, et. al, <u>Tennessee Law of Evidence</u> § 607.3 (3d.ed.1995). In addition, the "collateral fact rule" limits the introduction of extrinsic proof of contradictory facts regarding collateral or irrelevant matters testified about during direct examination. <u>See</u> Id. As such, the evidence was inadmissible for impeachment purposes.

Although we believe that the issue presents a close call, we conclude that admission of Officer Uher's testimony was error. Even if it was, however, such error does not require reversal unless it "affirmatively appear(s) to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). The victim knew the Defendant because he was her next door neighbor. She testified to the facts surrounding the aggravated rape and her injuries were apparent. The Defendant confessed that he was at the victim's home at the time of the incident and that he hit and touched the victim sexually. There was overwhelming evidence of the Defendant's guilt such that the prejudicial effect of the 1-900 testimony is not likely to have affected the verdict. After considering the entire record in the case <u>sub</u> <u>judice</u>, we are satisfied that this was harmless error. T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a).

II.

The Defendant argues that his sentence is excessive because the trial court misapplied five enhancement factors and failed to recognize mitigating factors. The Defendant was sentenced as a Range I, standard offender to twenty-five years in the Department of Correction. The trial judge found seven

sentence enhancement factors. The Defendant questions the following enhancement factors: (4) That the victim was particularly vulnerable because of age; (5) that the Defendant treated the victim with exceptional cruelty; (6) that the personal injuries inflicted upon the victim were particularly great; (7) that the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement; and (15) that the Defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114(4), (5), (6), (7), (15). The Defendant does not contest the trial court's application of enhancement factor (1), that he has a previous history of criminal convictions; and (8) that he has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (8).

When an accused challenges the length, range, or the manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of

-10-

potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant asserts that the proof did not establish that the victim was particularly vulnerable because of her age. See Tenn. Code Ann. § 40-35-114(4). A victim is particularly vulnerable when, because of age, he or she is incapable of resisting, summoning help, or testifying against the perpetrator. State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). The State bears the burden of proving that the victim possesses limitations that make him or her particularly vulnerable. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997); Adams, 864 S.W.2d at 35.

The record reveals that the victim was 79 years old at the time the offense was committed. She was "working" on her pear trees in the backyard just before the Defendant came to her house. However, there is evidence that the victim did not drive and that Adele Haun took her to the market and did errands for her. The victim's brother, James Hicks, handled her financial affairs. He characterized the victim's working in her garden as "piddling around." He testified that the victim had been having trouble walking for five or six years before the

-11-

incident and that sometimes, she could hardly walk. The victim herself testified at trial that she attempted to get away from the Defendant, but that he would pull her back and hit her. From the record before us, it appears that the Defendant took advantage of the victim's frailty during the commission of the offense. See State v. Butler, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994); State v. Larry Fields, C.C.A. No. 02C01-9201-CC-00012, Fayette County (Tenn. Crim. App., Jackson, Nov. 18, 1992), perm. to appeal denied (Tenn. 1993). We cannot conclude that the trial court erred in applying this enhancement factor.

The trial judge also applied enhancement factor (5), that the Defendant treated the victim with exceptional cruelty. Tenn. Code Ann. § 40-35-114(5). In order to appropriately find this factor, it requires a finding that the acts were "exceptionally" cruel, over and above that inherent to the offense. See State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995); Manning v. State, 883 S.W.2d 635, 639 (Tenn. Crim. App. 1994). Exceptional cruelty is usually found in cases of abuse or torture. State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995); see State v. Davis, 825 S.W.2d 109, 113 (Tenn. 1991); State v. Haynes, 720 S.W.2d 76, 86 (Tenn. Crim. App. 1986).

In the case at bar, the injuries received by the victim were a part of the proof which elevated the offense to aggravated rape under the law. Although the victim suffered painful injuries during the offense, these injuries are included in the statutory definition of bodily injury that constitutes aggravated rape. Our criminal code prohibits the use of elements of a criminal offense to enhance the sentence for the offense. Tenn. Code Ann. § 40-35-114. This case involved no extended length of torture, no weapons, nor any unusual type of abuse. Beyond

the obvious cruelty inherent in every rape involving bodily injury, we find no evidence introduced in the record to support a finding of <u>exceptional</u> cruelty. Thus, we must conclude that the trial court misapplied this enhancement factor.

The Defendant contends that the trial court erred in finding that the personal injuries inflicted upon the victim were particularly great. Tenn. Code Ann. § 40-35-114(6). "Personal injury" as expressed in enhancement factor (6) encompasses emotional and psychological injuries as well as physical injuries sustained by the victim. <u>State v. Hoyt</u>, 928 S.W.2d 935, 948 (Tenn. Crim. App. 1995); <u>State v. Melvin</u>, 913 S.W.2d 195 (Tenn. Crim. App. 1995)(citing <u>State v. Smith,</u> 891 S.W.2d 922 (Tenn. Crim. App. 1994)). However, before this factor may be applied, the State has the burden of establishing that the emotional injuries and psychological scarring are "particularly great." <u>Id.</u>

The victim testified that she still experiences pain from the injuries to her eyes, jaw and vagina. Her brother testified that the victim has not lived in her home since the attack. It is clear that the victim's life has been severely disrupted. Prior to the offense, the elderly victim was maintaining her independence in her own home with assistance from her family and friends and has been unable to do so since the rape. We believe that such severe consequences for the victim constituted injuries that were "particularly great." See <u>State v. Williams</u>, 920 S.W.2d 247, 259-60 (Tenn. Crim. App. 1995). We therefore find no error in the application of this factor.

Next, the Defendant argues that he trial court misapplied enhancement factor (7), that the offense was committed to gratify the defendant's desire for

-13-

pleasure or excitement. Tenn. Code Ann. § 40-35-114(7). In State v. Adams, 864 S.W.2d 31, 34-35 (Tenn.1993), our supreme court rejected the proposition that, "as a matter of law, every rape is implicitly committed for the purpose of pleasure or excitement." The supreme court noted that not all such crimes are committed for pleasure, but rather may be motivated by acts such as brutality, revenge, punishment, or intimidation. Id.; State v. Hoyt, 928 S.W.2d 935, 949 (Tenn. Crim. App. 1995). In State v. Kissinger, 922 S.W.2d 482, 491 (Tenn. 1996), the supreme court added that the commission of a crime to gratify a desire for pleasure or excitement is not limited to proof of sexual desire or sexual pleasure. Thus, evidence of the achievement of sexual orgasm will not, by itself, prove factor (7), nor will the absence of orgasm negate such application. Id. The State must demonstrate that a defendant was motivated to commit a crime to gratify a desire for pleasure or excitement. Id. "The focus is the offender's motive, not the eventual result." Id.

The trial judge applied this factor, citing that the Defendant called the 1-900 sex line and that it "got him into such a state of froth that he was an animal there in that home." The Defendant did enter the victim's residence and use the telephone. There was evidence in the record, that we have held was inadmissible, that a two-minute call to a 1-900 sex line was placed from the victim's home. Apart from that testimony, the record shows that the Defendant told the victim: "I'm going to kill you. I'm going to bite your breast off." At one point, the Defendant told the victim to perform fellatio. When the victim struggled to get loose, the Defendant said "You better stop; he'd chew it [her breast] off."

Although the evidence points to a violent attack by the Defendant, there is little to indicate the motivation behind the rape. No semen was detected by forensic testing, however its presence or absence is not controlling. There is no evidence in the record that the Defendant's acts took place to gratify a desire for "pleasure or excitement." We note the instruction provided by our supreme court in this regard:

> It applies anytime an offender commits an applicable offense to gratify the offender's desire for any pleasure or any excitement. While that pleasure or excitement may be of a sexual nature, it does not have to be. Therefore, an offender who is motivated to rape by his or her desire to overpower or brutalize, when that desire creates pleasure or excitement for the offender, may suffer a factor (7) sentence enhancement. Moreover, factor (7) may be used to enhance sentences for offenses that are not of a sexual nature. An offender who steals because of a pleasure experienced in "not getting caught;" an arsonist who burns houses due to the excitement that watching fire brings; an assaulter who breaks an arm to hear the victim beg for mercy--all may have their sentences enhanced under factor (7) providing the state produces proof of the factor.

Kissinger, 922 S.W.2d at 490. The record lacks evidence that the Defendant experienced pleasure or excitement because of the crime. Because the State has failed to meet its burden of proof to support the application of this factor, we must conclude that it was applied erroneously by the trial court.

The Defendant also challenges the imposition of factor (15), that the Defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114(15). We find no error in applying this factor. The Defendant was the next-door neighbor of the victim. Over the course of several months, the Defendant and his family established a pattern of using the victim's telephone on a regular basis without incident. On the night in question, the victim was initially reluctant to allow the Defendant in her home because it was late at night. The Defendant persuaded the victim to let him in because he said that his mother was sick and

that it would only take a few minutes. The Defendant used his prior relationship with the victim to gain entrance to her home. Such circumstances surrounding the offense support the application of factor (15).

Finally, the Defendant argues that the trial court failed to properly consider the mitigating factors that he was intoxicated and did not remember committing the acts and that he was extremely remorseful. However, voluntary intoxication is not available as a mitigating factor. See Tenn. Code Ann § 40-35-113(8). This Court has previously held that genuine, sincere remorse is a proper mitigating factor. See Tenn. Code Ann. § 40-35-113(13); State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995); State v. Buttrey, 756 S.W.2d 718, 722 (Tenn. Crim. App. 1988). Even if the Defendant's remorse was considered under the catch-all provision, this mitigator is not sufficient to outweigh the host of enhancement factors applicable to this case. See Tenn. Code Ann. § 40-35-113(13).

We recognize that the trial court failed to properly apply the sentencing principles as are required when imposing a sentence. However, our *de novo* review of the evidence at trial, the presentence report, the testimony from the sentencing hearing and the sentencing principles supports the imposition of the maximum sentence of twenty-five years. Although we have concluded that two enhancement factors were misapplied, the weight of the remaining factors militates in favor of the sentence of twenty-five (25) years as imposed by the trial court.

III.

As his final issue, the Defendant charges that the trial court erred by failing to grant pretrial jail credit for the time he spent in the Roane County Jail. After trial and sentencing, the Defendant filed a motion to correct the judgment, which was heard on July 1, 1996. The trial court denied the motion. The Defendant states that the aggravated rape occurred on August 20, 1994 and that he was arrested on August 21, 1994 and held continuously until his trial on April 12, 1996. The State notes that the time the Defendant spent in Roane County was service of a sentence for joyriding and that it should not apply as credit for his aggravated rape conviction. The Defendant was transferred to Roane County on November 16, 1994 and entered a guilty plea to joyriding. He served his sentence in Roane County and essentially remained there until being sentenced on June 12, 1996 to the Department of Correction. The record does not reflect any of the circumstances nor the length of sentence for the joyriding conviction. The trial court gave the Defendant ninety days of pretrial jail credit on his aggravated rape conviction. The Defendant claims that he is entitled to 601 days of jail credit.

Tennessee Code Annotated section 40-23-101(c) states, in pertinent part, that "[t]he trial court shall . . . allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail . . . . or county jail or workhouse, pending arraignment and trial." The awarding of these credits is mandatory. Stubbs v. State, 216 Tenn. 567, 393 S.W.2d 150 (1965).

-17-

We first note that the primary purpose of awarding pretrial jail credit is to prevent discrimination against indigent defendants who are unable to make bond prior to trial and appeal, unlike their counterparts with the financial means to obtain a bond. See State v. Silva, 680 S.W.2d 485, 486 (Tenn. Crim. App. 1984); Trigg v. State, 523 S.W.2d 375, 376 (Tenn. Crim. App. 1975). This Court has held that a defendant was not entitled to pretrial jail credit for time he served for a federal crime prior to his conviction in state court for armed robbery. Trigg, 523 S.W.2d at 376. Likewise, a defendant was not entitled to credit for jail time on a separate charge in another state. Majeed v. State, 621 S.W.2d 153, 155 (Tenn. Crim. App. 1981). Yet, if a defendant is held on two or more charges, he could earn pretrial credit for separate offenses commencing at the time he or she was charged for each offense if the sentences are ordered to run concurrently. See State v. Henry, 946 S.W.2d 833, 835 (Tenn. Crim. App. 1997).

Here, the Defendant was incarcerated pretrial and was transferred to Roane County where he pleaded guilty and proceeded to serve time in jail on the Roane County offense. Because the Defendant was serving a sentence, he could not have been released even if he had the means to post a bond. Furthermore, the reason for his incarceration did not arise from the offense in question. See Trigg, 523 S.W.2d 376. From the record that has been provided, we cannot conclude that the trial judge erred or abused his discretion in denying the Defendant's motion to correct jail credit.

Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
THOMAS T. WOODALL, JUDGE