IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1998 SESSION

June 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | C.C.A. No. 03C01-9705-CR-00165 |
| Appellee, | ) | |
| | ) | McMinn County |
| V. | ) | |
| | ) | Honorable Carroll L. Ross, Judge |
| **J. C. MEYER,** | ) | |
| | ) | (Rape of a Child - Two Counts) |
| Appellant. | ) | |

FOR THE APPELLANT:

Charles M. Corn
District Public Defender
P.O. Box 1453
Cleveland, TN 37364-1453

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Elizabeth B. Marney
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243-0493

Jerry N. Estes
District Attorney General

Richard Newman
Assistant District Attorney General
P.O. Box 647
Athens, TN 37303-0647

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

J. C. Meyer, the appellant, was convicted by a jury of two counts of rape of a child. The criminal court denied the appellant's motion for a new trial, and he appealed. He raises several issues for our review: (1) whether the trial court erred in denying the appellant's motion to sever the two counts of the indictment; (2) whether the court erred in failing to order the state to file an additional bill of particulars; (3) whether the court erred in allowing the state to introduce into evidence three incidents of sexual penetration when the appellant was only charged with two counts; (4) whether the trial court erred in instructing the jury that the appellant's earliest release date would be after serving 5.73 years in prison; and (5) whether the evidence was sufficient to support the convictions.

## PROCEDURAL BACKGROUND

In March 1996, the appellant was indicted on four counts of the rape of a child. The first two counts were dismissed in August 1996. The third and fourth counts alleged that the rapes occurred on or between January 1995 and May 1995. In July 1996, the appellant filed a motion for a bill of particulars, asking the court to order the state to provide the date, time, and place of each rape, the manner of the rape, and any known witnesses. The state filed a bill of particulars specifying that between January and May 1995, while living on Circle Drive in Etowa, Tennessee, the appellant raped the victim, a child less than thirteen years of age. The penetration was orally and vaginally. The state further informed the appellant that the appellant's daughter, a minor, and the victim's brother, a minor, may have been present when the alleged rapes occurred and that they might be called as witnesses.

On September 13, 1996, the appellant filed a motion for a more complete bill of particulars, requesting a specific description of when the crimes occurred. The appellant also filed a motion to sever the two counts of rape for trial.

On September 30, 1996, the court held a hearing on the appellant's motion to sever and his motion for a more complete bill of particulars. The court denied the appellant's motion to sever the counts in the indictment, in part because the counts involved the same victim. On October 1, 1996, the state amended the indictment to allege that the two counts of rape occurred on, or between, November 1994 and March 1, 1995. The appellant filed a motion requesting the court to charge the jury on the applicable range of punishments. The appellant also filed a motion to exclude all evidence of sexual conduct other than evidence of the two acts of sexual penetration alleged in the indictment.

**EVIDENCE**

At trial, the victim, an eight-year-old female, testified that from November 1994 through February 1995, she lived with her mother, brother, and her mother's boyfriend, the appellant. They lived in a three-bedroom apartment on Circle Drive in McMinn County. The victim testified that sometime near Christmas of 1994, she was lying in her mother's bed. Her mother was asleep in another room. The victim testified that the appellant came into the room, locked the door, took off his shorts, kissed her, and lay on top of her. The victim testified that the appellant rubbed the "private place " between her legs with his hands. She testified that the appellant "stuck his private in mine." The victim testified that she told the appellant to get off of her, and he did.

The victim testified that the appellant approached her on a second occasion and "did the same thing, except when I told him to stop he didn't stop." She testified that this occurred in her mother's bedroom. She testified that the appellant placed his "private" in her "private." She testified that the appellant also stuck his "private" in her mouth. The victim said that it hurt when the appellant stuck his "private" in her "private." She stated that she noticed blood on the bed. The victim testified that the appellant told her not to tell anyone or he would go to jail, and, that he would beat her mother. The victim testified that

she told her mother what the appellant had done to her, but that her mother told her to say that her brother or Uncle Terry abused her. The victim testified that no one else had ever sexually abused her. She stated that the sexual contact occurred once or twice when there was a Christmas tree in the apartment.

The appellant and the victim's mother were evicted from Circle Drive in February 1995 and went to Florida in May or June of 1995. During part of this time, the victim lived with her maternal grandmother, Shirley Patton. Shortly after moving to Florida, the victim's mother returned to Tennessee to bring the victim and the victim's brother to Florida. The appellant's daughter, Melissa Meyer, and the victim's uncle, Terry Thompson, also lived with them at various times in Florida. In October 1995, the victim's grandmother brought the victim and her brother back to Tennessee. The parties stipulated that if Ricky Thompson, the victim's uncle, were present that he would testify that on October 24, 1995, the day after the victim returned from Florida, she told Ricky that the appellant had hurt her in her privates. Ricky told the victim's grandmother and Patty DeBoard who took her to Dr. Iris Snyder the next morning.

Dr. Snyder, a pediatrician and the victim's doctor, examined the victim. Dr. Snyder testified that the examination showed positive findings of sexual abuse, including an enlarged hymenal opening, small tears in the hymen, and a thin hymen. Dr. Snyder testified that these findings were consistent with past sexual abuse. Dr. Snyder testified that she could not determine exactly when the abuse occurred, but that the injuries were at least a month old.

The victim made a statement to a Department of Human Services employee. Both the state and the appellant had access to this statement before trial, and it was introduced into evidence. The defense brought out the inconsistencies in the statement and the victim's trial testimony. The victim said in her statement that abuse occurred while her mother was at work at the Waffle

-4-

House both in Tennessee and Florida. At trial, the victim testified that her mother only worked at the Waffle House in Florida. The victim's mother testified that she worked at the Waffle House in Florida, but not in Tennessee. Next, the victim stated that the appellant's daughter was present when a rape occurred. The victim said in her statement and at trial that the appellant's daughter visited the appellant in Florida, but that she had never been to Tennessee. The victim's mother testified that the appellant's daughter had never been to the Circle Drive apartment in Tennessee. Lastly, the defense introduced letters written by the victim to the appellant while the appellant was in jail. In the letters, the victim said that she missed the appellant, that he was the best dad that she had ever had, that she loved him and wanted to see him. The victim testified that she wrote the letters before the rapes occurred. The victim's mother testified that she mailed the letters after the rapes occurred, implying that the letters were written after the rapes.

At the close of the state's proof, the state elected to proceed on one count of vaginal rape and one count of oral rape. The court denied the appellant's motion for judgment of acquittal. The victim's mother, Donna, and the appellant testified for the defense. The victim's mother testified that she had never seen the appellant act negatively in any way toward the victim. She testified that she made Terry Thompson, her brother, leave the Florida residence because he would not leave the victim alone, implying that he had sexually abused the victim. She testified that Terry had sexually abused her during their childhood. Donna's mother testified that she did not believe that Terry abused Donna because Donna never told her about it.

The appellant denied that he raped the victim. On direct examination, the appellant testified that he has convictions for robbery with a firearm, two counts of conspiracy to commit robbery, common law robbery, aggravated burglary, and theft. He testified that he left Tennessee while on bond for the aggravated

burglary because his mother was dying. The appellant was extradited back to Tennessee. He testified that Donna's mother hated him. The appellant testified that he never locked the victim's brother out of the house. On rebuttal, the victim's brother testified that on one or two occasions the victim and the appellant were in the house alone and that sometimes the appellant would not let the victim play outside. The victim's brother testified that he could not get in the house on occasion, but that he thought that the door locked automatically.

## MOTION TO SEVER

The court denied the appellant's motion to sever the counts in the indictment. Tennessee Rule of Criminal Procedure 8(b) provides that the state may join two or more offenses in the same indictment if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character. Tennessee Rule of Criminal Procedure 14(b), however, provides that the defendant shall have a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others.

The appellant argues that the two alleged acts of rape were not part of a common scheme or plan because the acts were substantially disconnected in time and were not part of the same criminal episode. We disagree. There are three categories of common scheme or plan evidence: (1) distinctive designs, or signature crimes; (2) a larger continuing plan or conspiracy; and (3) the same transaction. State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995). In Hoyt, the Court said:

> To fall within the first category of 'distinctive design or signature,' similar crimes committed by the defendant 'are admissible to show the defendant's modus operandi from which it may be inferred that the defendant probably committed the nearly identical crime for which he or she is on trial.' However, the modus operandi must be so unique and distinctive as to be like a signature, i.e., it must be probative of the defendant's identity. To determine whether certain crimes fit into this category, 'the test is not whether there was

> evidence that a defendant committed both crimes, but whether there was a unique method used in committing the crimes.'

Hoyt, 928 S.W.2d at 943 (citations omitted).

> In order to be 'parts of a common scheme or plan' as contemplated by Rules 8(b) and 14(b)(1), two or more sets of offenses must be so similar in modus operandi and occur within such a relatively close proximity of time and location to each other that there can be little doubt that the offenses were committed by the same person(s).

State v. Peacock, 638 S.W.2d 837, 840 (Tenn. Crim. App. 1982).

The similarities between the offenses alleged in counts three and four are sufficient to establish a distinctive design. The victim is the same in each offense. The offenses occurred within a relatively short period of time, four months. The circumstances surrounding the offenses are similar. Both offenses occurred in the same room and in the same house. Both rapes occurred when the appellant had the opportunity to be alone with the victim.

Next, we must determine the admissibility of evidence of one crime in the trial of the other. In determining admissibility, the trial court must comply with the procedural requirements of Tennessee Rule of Evidence 404(b). Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. Such evidence, however, may be admissible for other purposes if its probative value is outweighed by the danger of unfair prejudice. Evidence of other crimes is admissible to show a common scheme or plan for the commission of two or more crimes so related to each other that proof of one tends to establish the other. Hoyt, 928 S.W.2d at 944. Therefore, the evidence of the offense in count three would be admissible in the trial on count four and vice versa.

Lastly, we must determine whether the probative value of the offense is outweighed by the danger of unfair prejudice to the appellant. The similarity of the acts makes the probative value of the evidence particularly significant. Hoyt, 928 S.W.2d at 944 (quoting State v. McKnight, 900 S.W.2d 36, 51 (Tenn. Crim. App. 1994)). The appellant made no showing of unfair prejudice. The danger of unfair prejudice does not outweigh the probative value of the evidence of each alleged rape. Once again, the victim is the same, the time period is relatively short, the location of the rapes is the same, and the nature of the rapes is the same. The trial court properly denied the appellant's motion to sever.

**BILL OF PARTICULARS**

The appellant argues that the court erred in denying his motion for a more complete bill of particulars. The purpose of the bill of particulars is to provide information about the details of the charge when necessary for a defendant to prepare his or her defense, to avoid prejudicial surprise at trial, and to enable the defendant to preserve a plea of double jeopardy. Information that may be required in the bill of particulars includes, but is not limited to, details as to the nature, time, date, or location of the offense. State v. Speck, 944 S.W.2d 598, 600 (Tenn. 1997).

Generally, only after a trial, will the court be able to determine whether deficiencies in the bill of particulars prevented the defendant from preparing an adequate defense, caused undue and prejudicial surprise, or made untenable a later plea of double jeopardy. "In other words, the trial court cannot determine whether or not the defendant has been hampered in his defense until the court knows what proof the state will offer as to time and place of the offense, and how this evidence relates to the actual theory of defense." Id. at 600-01 (quoting State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991)). Although a court should make every effort to see that the prosecution supplies the necessary information in the bill of particulars, in cases involving child sexual abuse, the prosecution

may be unable to supply all the specifics requested by the defense simply because of the age of the child. Id. at 600.

At the hearing, the appellant was concerned that the state limit its proof so it did not unduly surprise the appellant at trial. The court informed both parties that they could review the Department of Human Services file. The assistant district attorney informed the appellant at the hearing that the two counts of rape involved both vaginal and oral penetration on both occasions. The appellant's attorney responded that he believed that he had everything he needed to try the case, but asked the state to put the new information in writing. Although the state did not file a second bill of particulars, it is clear from the record that the state gave the appellant all the information that was available on the alleged offenses.

On appeal, the appellant argues that the information supplied by the state did not describe the number of penetrations or whether there were single or multiple criminal episodes. As argued by the state, the appellant has failed to articulate how the lack of information, if this information was lacking, prevented the appellant from preparing his defense, surprised him at trial, or subjected him to double jeopardy. The appellant has not offered a defense that would have been available if the state could have offered greater specificity. The information provided by the state was sufficient to allow the appellant to prepare his defense and to protect him from prejudicial surprise at trial. The state provided the appellant with a four-month time span, the location, and the nature of the rapes. The state gave the appellant all the information that it had. We find no merit to this issue.

## EVIDENTIARY ISSUE

Next, the appellant argues that the trial court erred in allowing the state to introduce evidence of three sexual penetrations when the appellant was only

charged with two counts of rape of a child. He cites State v. Rickman, 876 S.W.2d 824 (Tenn. 1994), but does not explain how the case supports his argument. In Rickman, the Tennessee Supreme Court refused to adopt a broad sex crimes exception to Rule 404(b) of the Tennessee Rules of Evidence. That rule provides that evidence of other crimes, wrongs or acts are not admissible to prove the character of a person in order to show action in conformity with the character trait on a particular occasion. The Court, however, reaffirmed the special rule of "admitting evidence of other sex crimes when an indictment is not time specific and when the evidence relates to sex crimes that allegedly occurred during the time as charged in the indictment. " Rickman, 876 S.W.2d at 829. The Court said that "[I]n such cases, the State must elect at the close of its proof-in-chief as to the particular incident for which a conviction is being sought." Id. "Unlike evidence of prior crimes excluded by Bunch and Tenn. R. Evid. 404(a) & (b), evidence of a prior sex crime that is necessarily included within the charge of the indictment is also necessarily relevant to the issues being tried and, therefore, is admissible." Id.

We find no merit to the appellant's argument. The state produced evidence of one oral and two vaginal penetrations. All three acts occurred during the time period alleged in the indictment. At the close of its proof-in-chief, the state elected to seek convictions for one oral and one vaginal penetration. The facts of this case fit within the special rule enunciated by the Court in Rickman.

**JURY INSTRUCTIONS**

The appellant next argues that the court erred in charging the jury that the appellant's earliest release date, if convicted of the rape of a child, would be after serving 5.73 years in prison, requiring a reversal of the jury's verdict. Pursuant to Tennessee Code Annotated §§ 40-35-201(b)(1) & (2)(A)(I) (Supp. 1995), the appellant requested the court to instruct the jury on the possible penalties for the offense charged and all lesser included offenses. When a charge including

possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Tenn. Code Ann. § 40-35-201(2)(A)(I).

The court instructed the jury that the range of punishment for the offense of rape of a child was twenty-five to forty years in the state penitentiary. The court erroneously instructed the jury that the minimum number of years that a person sentenced to imprisonment for the rape of a child would have to serve before reaching the earliest release eligibility date was 5.73 years. A person convicted of the rape of a child must serve the entire sentence imposed by the court undiminished by any sentence reduction credits. Tenn. Code Ann. §§ 40-35-501(I)(3)(Supp. 1995), 39-13-523(b)(Supp. 1995).

Although the court's instruction was incorrect, the error was harmless; it does not require reversal. Tennessee Rule of Appellate Procedure 36(b) provides that no judgment of conviction shall be reversed on appeal except for errors that affirmatively appear to have affected the result of the trial on the merits. The appellant does not explain how the erroneous jury instruction affected the result of his trial. The court instructed the jury on the elements of rape of a child and the lesser included offense of aggravated sexual battery. Aggravated sexual battery is unlawful sexual contact. Tenn. Code Ann. § 39-13-504 (Supp. 1995). The evidence of penetration was substantial. We find that the error does not mandate reversal.

## SUFFICIENCY OF THE EVIDENCE

The appellant argues that the evidence is insufficient to support the jury's verdict for several reasons: (1) the medical evidence did not establish when the alleged abuse occurred; (2) the victim testified that the event was painful, but did

not complain of pain when she had a chance to do so; (3) the child was not taken to a doctor until approximately seven months after the alleged event; (4) at the time of the complaint, the child was in the custody of an individual who was hostile to the appellant; (5) the conviction was based upon the testimony of a child who had been overly coached, after the "incidents"; (6) the victim wrote letters expressing affection for the appellant; and (7) the state did not prove venue.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the state, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). It is the appellant's burden to illustrate to this Court that the evidence preponderates against the guilty verdict in favor of his or her innocence. Id.

The issues raised by the appellant were for the jury to decide. Both the state and the defense did a fine job of raising and addressing the issues in this case. The testimonies of the victim and her treating physician were accredited

by the jury and are sufficient evidence to support the jury's verdict. This Court finds the evidence to be legally sufficient to sustain the verdict of the jury.

## CONCLUSION

This Court affirms the judgment of conviction on all counts.

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
CORNELIA A. CLARK, Special Judge