IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1998 SESSION

FILED

September 30, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9708-CC-00177 |
| Appellee/Appellant, | * | DICKSON COUNTY |
| VS. | * | Hon. Robert E. Burch, Judge |
| DELBERT LEE HARRIS, | * | (Aggravated Assault, Rape, Rape of a Child, and Attempt to Commit |
| Appellant/Appellee. | * | Sexual Battery) |

For Appellant/Appellee:

Jack L. Garton, Attorney
White, Regen & Garton, PLC
107 Professional Building
110 North Mathis Drive
P.O. Box 190
Dickson, TN  37056-0190

For Appellee/Appellant:

John Knox Walkup
Attorney General and Reporter

Deborah A. Tullis
Assistant Attorney General
Criminal Justice Division
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, TN  37243

Dan Mitchum Alsobrooks
District Attorney General

Robert S. Wilson
Assistant District Attorney General
Twenty-Third Judicial District
P.O. Box 580
Charlotte, TN  37036

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

<u>OPINION</u>

The defendant, Delbert Lee Harris, was convicted of aggravated assault, rape, rape of a child, and attempted sexual battery. The trial court imposed sentences of four years for aggravated assault, ten years for rape, twenty-two years for rape of a child, and eleven months and twenty-nine days for attempt to commit sexual battery. The sentence for rape is to be served consecutively to the sentence for rape of a child for an effective sentence of thirty-two years. The defendant was on probation for a prior crime at the time of the offenses. All sentences are to be served consecutively to the earlier term.

In this appeal of right, the defendant challenges the sufficiency of the evidence and claims that the sentences are excessive. In its separate appeal, the state asserts that the trial court erred by establishing a Range I, thirty percent release eligibility date for the twenty-two year sentence for rape of a child.

There is merit to the appeal by the state. The judgments of conviction are affirmed. The causes are remanded for resentencing.

By the late summer of 1995, the defendant and his wife, Diane Harris, had been married almost ten years. There were two minor children born to their marriage. Ms. Harris had three children by a prior marriage; two, including the minor female victim, lived in the Harris residence. The victim was born September 10, 1982.

At approximately 3:40 A.M. on September 17, 1995, the defendant awoke the victim, directed her to an upstairs playroom, and began to remove her shorts. Meanwhile, Ms. Harris woke from her sleep, saw the victim being led

2

upstairs by the defendant, and followed them. The victim began to cry as her clothes were being removed by the defendant. At that point, Ms. Harris intervened, grabbed her daughter, and took her into the kitchen. She then called 911, reported that her thirteen-year-old daughter had been molested, and informed the dispatcher that the defendant had taken possession of a gun. Afterward, Ms. Harris woke her seven-year-old daughter so all three of them could leave the residence. The defendant first threatened to commit suicide and then made threats to Ms. Harris. The victim and her younger sister heard the defendant say, "You f_____ up now" to Ms. Harris. The defendant then pointed a gun at her chest from less than a foot away. When he pulled the trigger, the bullet jammed. The defendant then went upstairs to get a second gun. As he did so, Ms. Harris removed her two daughters from the residence and hid them behind a playhouse in the front yard until the police arrived.

Ms. Harris then went to the outside window of her sons' bedroom. The boys were asleep. When Ms. Harris saw the defendant enter the bedroom, she ran into some tall weeds at the rear of the house, hid, and began to pray. Armed with a rifle, the defendant then walked out of the residence and called for Ms. Harris and her daughters, promising that he would not harm them and that he just wanted to talk.

Four police vehicles were dispatched to the Harris residence. Deputy Wayne Heflin, who arrived first, was met by the victim and her sister. They were described by Deputy B. J. Gafford as "very upset ... hollering that their daddy had taken a weapon and run into the woods...." Deputy Heflin also learned from the victim that the defendant had touched her private parts and had done so before. When the victim reported that her younger brothers were still inside, Deputies Heflin

3

and Gafford removed the boys from the residence. As the deputy started to drive away, Ms. Harris, described as "really afraid," approached the police vehicle and reported that the defendant had tried to shoot her. She told the officer that she feared that the defendant, who had a scope on his rifle, might shoot her from the woods.

Later, Dr. David Bridges examined the victim, found her to be anxious and depressed, and learned her account of what had occurred at the Harris residence. The victim reported to Dr. Bridges that the defendant had forced her to engage in sexual intercourse in May of 1995. She explained that Ms. Harris did not know about the earlier incident.

Detective Tim Eads of the Dickson County Sheriff's Department recovered two 30/30 Winchester shells from the Harris residence. He described one of the shells, which was found on the defendant's bed in the master bedroom, as "bent and [with] a scrap mark on the side like an abrasion." Detective Eads' search took place about five days after the offense.

The victim testified that just after she completed the school year in 1995, the defendant took her outside, placed her on a sleeping bag in the yard, and forced his penis into her vagina. She also described a second rape which occurred on September 12, 1995. She recalled that the defendant wore a condom as he penetrated her vagina. Finally, she recounted the September 17, 1995, occurrence when the defendant "was trying to pull my clothes off and my mom walked in and found him there and she went and called the cops...." She testified that the defendant "tried to shoot my mom."

4

The defendant testified that he had married Ms. Harris in Maryland in 1986. The family moved to Tennessee a month later. He stated that both he and Ms. Harris had alcohol problems but she quit drinking after the move to Tennessee. The defendant claimed that he and Ms. Harris had marital problems due to her jealousy, possessiveness and disapproval of his spending so much time coaching softball, baseball, and football. He testified that he had attempted to commit suicide on one occasion before the series of incidents that led to his arrest. He denied that he raped the victim either in the spring of 1995 or on September 12 of that year. He described the September 17 incident as an altercation initiated by Ms. Harris. The defendant contended that he took possession of the gun to "attempt to kill myself" and explained that he went outside so that Ms. Harris could see. He testified that when the police arrived, he simply walked up a hill and stayed there for a time before eventually going to a friend's house. The defendant maintained that he returned to his own residence when he saw that his friend's residence lights were off. He stayed there until September 20. He testified that he then drove to Ms. Harris's grandmother's house in Nashville to say goodbye to his wife and the children. The defendant remembered telling Ms. Harris that she could have the residence and recalled giving the boys "a hug bye." He then returned to Maryland where he later learned that there were criminal warrants against him in this state.

I

Initially, the defendant complains that the proof was insufficient to establish the offense of aggravated assault because Ms. Harris failed to testify that she feared imminent bodily injury. He argues that he went to get the rifle in order to commit suicide and did not intend to place Ms. Harris in danger. The defendant argues that there was no force or coercion involved as was necessary for either the rape or the rape of a child convictions. Also, the defendant asserts that he did not

5

attempt to commit a sexual battery because there was no proof of threat on his part or of resistance on the part of the victim.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). This court may not re-evaluate the evidence nor substitute its inferences for those drawn by the trier of fact from the evidence. Farmer v. State, 574 S.W.2d 49 (Tenn. Crim. App. 1978); State v. Graves, 493 S.W.2d 474 (Tenn. 1973). A jury verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the testimony in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). A conviction may only be set aside when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13 (e); Jackson v. Virginia, 443 U.S. 307 (1979).

One "who intentionally or knowingly causes another to reasonably fear imminent bodily injury" and either "causes serious bodily injury to another" or "uses or displays a deadly weapon" commits an aggravated assault. Tenn. Code Ann. §§ 39-13-101, -102. Here, of course, Ms. Harris testified that the defendant pointed and attempted to fire a gun into her chest from less than a foot away. She expressed her fear to Deputy Heflin and exhibited fear by hiding from the defendant on the outside of their residence. Circumstances warranted a finding that the fear was reasonable. The jury also acted within its prerogative by rejecting the

6

defendant's assertion that he possessed the weapon for suicide purposes only and by accepting the theory of the state.

"Rape" is the "unlawful sexual penetration of a victim ... accompanied by ... force or coercion.... Tenn. Code Ann. § 39-13-503(a)(1). "Coercion" may be accomplished through the use of parental or custodial authority of a child less than fifteen years of age. Tenn. Code Ann. § 39-13-501(1). The defendant, the stepfather of the victim, penetrated her once when she was thirteen years old. The victim lived in his residence at the time and qualified as being in his custody.

A "rape of a child is the unlawful sexual penetration of a victim by the defendant ... if such victim is less than thirteen years of age." Tenn. Code Ann. § 39-13-522(a). The victim was only twelve at the end of the school year in 1995 when the first penetration occurred. Thus, all of the elements of the crime of rape of a child were established by the proof.

Sexual battery, a Class E felony, "is unlawful sexual contact with a victim by the defendant ... accompanied by ... force or coercion...." Tenn. Code Ann. §§ 39-13-503(a)(1), -505(a)(b). Attempt, which would reduce sexual battery to a Class A misdemeanor, is defined by Tenn. Code Ann. § 39-12-101. The proof was that the defendant pulled down the victim's shorts at 3:45 A.M. in the morning while everyone else in the household was asleep. The victim stood, "silently crying," according to Ms. Harris. These and other circumstances five days before when the defendant raped the victim corroborated sexual aggression on the part of the defendant. An attempt is committed when, acting with the kind of culpability otherwise required for the offense, a defendant "acts with intent to cause a result that is an element of the offense, and believes that the conduct will cause the result

7

without further conduct on the person's part" or "acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(2), (3).

The evidence is sufficient as to each of the crimes.

II

Next, the defendant claims that the sentence is excessive. In its appeal, the state claims the sentence was inadequate because the trial judge established a Range I, thirty percent release eligibility for the rape of a child sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the

nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of these offenses, the presumptive sentence was the minimum in the range. Tenn. Code Ann. § 40-35-210(c) (amended effective July 1, 1995 to make the presumptive sentence for a Class A felony the midpoint in the range). Should the trial court find mitigating and enhancement factors, it must start at the presumptive minimum in the range and enhance the sentence based upon any applicable enhancement factors, then reduce the sentence based upon any appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. See Ashby, 823 S.W.2d at 169. The trial court, however, should make specific findings on the record which indicate its application of the sentencing principles. Tenn. Code Ann. §§ 40-35-209 and -210.

As a Range I offender, the defendant was eligible for a sentence of fifteen to twenty-five years for rape of a child. Tenn. Code Ann. §§ 39-13-522(b); 40-35-112(a)(1). Because the offense occurred in May of 1995, the presumptive sentence is the minimum within the range. Tenn. Code Ann. § 40-35-210(c). In the imposition of the twenty-two-year sentence, the trial court determined that there were two enhancement factors: (1) that the crime was committed to gratify the defendant's desire for pleasure or excitement; and (2) that the defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114(7), (15). A mitigating factor was that the defendant neither caused nor threatened serious bodily injury to the

9

child victim. Tenn. Code Ann. § 40-35-113(1). The defendant contends that the "gratification" enhancement factor was improperly applied because the state, which has the burden of demonstrating that the rape was sexually motivated, failed to meet its burden of proof in accordance with the ruling in State v. Adams, 864 S.W.2d 31 (Tenn. 1993). In response, the state asserts that the trial court did not rely heavily on the first enhancement factor and gave little weight to the mitigating factor.

Pleasure or excitement is not an essential part of the crime of rape. For that reason, a sentence may be enhanced if that factor is present. State v. Hoyt, 928 S.W.2d 935 (Tenn. Crim. App. 1995). The state has the burden of demonstrating that the rape was due to a sexual desire. State v. Smith, 910 S.W.2d 457 (Tenn. Crim. App. 1995). In our view, the repetition of acts of a sexual nature suggest a desire for pleasure or excitement. Use of a condom in a subsequent act and his implementation of methods designed to avoid detection by Ms. Harris also suggest a planned criminal act undertaken for sexual pleasure. Overall, the circumstances reflected by the record warrant application of the factor.

A Range I sentence for rape is between eight and twelve years. Tenn. Code Ann. §§ 39-13-503(b); 40-35-112(a)(2). The presumption is the minimum sentence within the range. Tenn. Code Ann. § 40-35-210(c). The trial court found two enhancement factors: (1) the crime was committed to gratify the defendant's desire for pleasure and excitement; and (2) the defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114(7), (15). The trial court also found a mitigating factor, that the defendant neither caused nor threatened serious bodily injury to the victim. Again, the defendant contends that the state failed to submit proof on the second enhancement factor. In response, the state asserts that the

trial court imposed a ten-year sentence based primarily on abuse of a position of private trust and that little weight was given to the mitigating factor.  For reasons previously stated, we believe the "gratification" factor should apply.

As a Range I offender, the defendant was eligible for a sentence of three to six years for aggravated assault.  Tenn. Code Ann. § 39-13-102(b); § 40-35-112(a)(3).  The trial court determined that use of a firearm was an enhancement factor and thus imposed a four-year sentence.  Tenn. Code Ann. § 40-35-114(9).  Because the use of a deadly weapon is an element of aggravated assault, the state has conceded that the factor was inappropriately applied.  Tenn. Code Ann. § 39-13-103; State v. Treanous L. Davis, No. 01C01-9507-CR-00226 (Tenn. Crim. App., at Nashville, Feb. 29, 1996).

The state nonetheless asserts that a four-year sentence is appropriate because the circumstances would have warranted the application of Tenn. Code Ann. § 40-35-114(3): that the offense involved more than one victim.  The state argues that the assault of Diane Harris endangered the two children present.  We agree with the state.  The defendant attempted to fire the weapon when children were present.  Even after the escape by Ms. Harris and her daughter, the defendant remained armed and sought their return.  The other children still in the residence were at risk.  Because an enhancement factor is present, a four-year sentence is appropriate.

Finally, the defendant argues that consecutive sentencing is unnecessary.  Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976).  In that case our supreme

11

court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution: "[C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." State v. Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation;

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." State v. Wilkerson, 905 S.W.2d at 938. The record must show that the sentencing principles and all relevant facts and circumstances were considered before the presumption of correctness applies.

13

The trial court imposed consecutive sentencing because the defendant had been convicted of two or more statutory offenses involving a sexual abuse of a minor. Tenn. Code Ann. § 40-35-115(b)(5). That the defendant was the stepfather of the minor victim was the essential concern of the trial court. That the activity had been repeated and that the victim suffered emotionally as a result were also concerns.

Obviously, there was a statutory basis for the consecutive sentences. In our view, the trial court acted within its discretion in requiring that two of the four sentences be consecutive. Both of the consecutively sentenced crimes were of a serious nature and committed against a particularly vulnerable victim.

The state has asked for a resentencing based upon Tenn. Code Ann. § 39-13-523 which was enacted in 1992:

> (b) Notwithstanding any provision of law to the contrary, a multiple rapist or a child rapist ... shall be required to serve the entire sentence imposed by the court undiminished by any sentence reduction credits such person may be eligible for or earn....
>
> (c) The provisions of title 40, chapter 35, part 5, relative to release eligibility status and parole shall not apply to or authorize the release of a multiple rapist or child rapist, as defined in subsection (a), prior to the service of the entire sentence imposed by the court.

Tennessee Code Annotated § 40-35-501, et seq., governs the authority to release a defendant on parole. In 1992, that portion of our code provided that a "felony sentence to the Department of Correction ... shall be served according to this chapter. An inmate shall not be eligible for parole until reaching his release eligibility date...." Tenn. Code Ann. § 40-35-501(a)(1). Subsection (c) establishes release eligibility at 30% for a Range I standard offender. Id. The language of the child rape statute, subsection (c), provides that "title 40, chapter 35, part 5, relative to

14

release eligibility status and parole shall not ... authorize the release of a ... child rapist ... prior to service of the entire sentence imposed by the court." Tenn. Code Ann. § 39-13-523(2)(c). In our view, a child rapist is not entitled to be released on parole.

The trial court imposed all three sentences at the same time. It intended under these circumstances an effective sentence of thirty-two years. Because the trial court was in error in determining release eligibility on the longest of the individual sentences, this court deems it appropriate for the matter to be remanded for a new sentencing hearing on each count. See State v. Roy Don Gibson, No. 02C01-9604-CC-00117 (Tenn. Crim. App., at Jackson, June 25, 1997), app. denied, (Tenn. Feb. 23, 1998). The trial court must establish sentences on each count that, when taken together, reflect the purposes and principles of the 1989 Act. Id.

_____In summary, the judgments of conviction are affirmed. The causes are remanded for resentencing.

_____
Gary R. Wade, Judge

CONCUR:


_____
Thomas T. Woodall, Judge


_____
L.T. Lafferty, Special Judge