STATE of Tennessee, Appellee,

v.

Richard J. HOYT, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 13, 1995.

Richard W. DeBerry, Asst. District Public Defender, Camden, for Appellant.

**1.** The appellant also pled guilty to driving under the influence and driving on a revoked license. These convictions are not at issue in this appeal.

Charles W. Burson, Attorney General and Reporter, Clinton J. Morgan, Assistant Attorney General, Criminal Justice Division, Nashville, G. Robert Radford, District Attorney General, John Overton, Asst. District Attorney General, Savannah, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Richard J. Hoyt, was convicted of two counts of aggravated rape and one count of aggravated sexual battery after a jury trial in the Circuit Court of Hardin County.[1] The trial court sentenced the appellant to twenty-five years for each aggravated rape conviction and twelve years for the aggravated sexual battery conviction. The court ordered the sentences to run consecutively, resulting in an effective sentence of sixty-two years. In this appeal as of right, the appellant raises four issues for our review. First, the appellant challenges the sufficiency of the evidence to sustain any of the three convictions. Second, the appellant contends that the trial court erred in failing to sever the three counts of the indictment. Third, the appellant argues that the individual sentences were excessive and based upon improper enhancement factors. Finally, the appellant contends that the trial court erred in ordering consecutive sentences.

After a review of the record, we reverse the judgment of the trial court.

### I. Factual Background

The offenses which give rise to the appellant's convictions are:

Count One, aggravated rape of AL[2] during the period between November 1, 1992 and February 7, 1994;

Count Two, aggravated rape of RL during the period between November 1, 1992 and February 7, 1994; and

Count Three, aggravated sexual battery of KB during the period between July 1, 1993 and February 7, 1994.

**2.** Consistent with the policy of this court, we will withhold the identity of young children involved in sexual abuse cases, identifying them only by their initials. *See State v. Schimpf,* 782 S.W.2d 186, *note* 1 (Tenn.Crim.App.1989).

On the dates these offenses occurred, the appellant was married to the victims' grandmother. All three of the victims were minors under the age of thirteen. Two of the victims, AL and RL, who are brother and sister and are the grandchildren of the appellant, lived with the appellant and his wife in Hardin County. The other victim, KB, the step-grandchild of the appellant, lived with her mother in Lewis County.

The following facts were developed as to each of the three counts:

### A. Count One

As to the first count of aggravated rape, AL, who was eight years old at the time of the trial, testified that she lived with her grandmother and the appellant in 1993. AL stated that on one occasion, while in the bathroom at the appellant's home, the appellant told her to "suck [her] brother's private" and told her brother to "suck [her] private." AL also testified that on at least one occasion the appellant forced her to "suck his private" and that he "licked [her] private." AL stated that the appellant told her that he would kill her mother if she told anyone.

### B. Count Two

As to the second count of aggravated rape, RL, who was nine years of age at the time of the trial, testified that he also lived with his grandmother and the appellant during the 1993 school year. RL stated that the appellant made him "suck [the appellant's] private" at times when his grandmother was not at home, and that the appellant "sucked [his] private." RL testified that the appellant had been doing these things for several years.

### C. Count Three

As to the charge of aggravated sexual battery, KB, who was eleven years old at the time of the trial, testified that in February 1993, she, her mother, and her younger sister visited the appellant and his wife to celebrate the appellant's birthday. KB and the appellant were sitting in her mother's van as KB, her mother, and her sister were getting ready to leave. KB testified that, as she sat in the van, the appellant put his hand to her breast area and "tickled" her, and "french

kissed" her on the mouth. KB stated that on a prior occasion the appellant had "messed" with her breast while he was tickling her. KB's mother testified that on their way home that day, KB told her what had happened. The next day, KB's mother and KB's aunt (AL and RL's mother) took KB and the other children to the public welfare office, where they spoke with a lady about incidents of sexual abuse involving the appellant. Elaine Brown, an employee of the Department of Human Services, corroborated the mother's testimony.

KB's younger sister, who was eight years old at the time of the trial, testified that she was in the van during the incident and saw the appellant reach down KB's shirt. According to the younger sister, as the appellant reached down KB's shirt, he exclaimed, "[o]ops, you ain't got a bra on."

Lowel Morgan, a neighbor of the appellant, testified for the defense. Morgan testified that he had known the appellant for about ten months, and that he had given excess milk from his dairy cows to the appellant on several occasions. Morgan stated that he never saw anything out of the ordinary when he was at the appellant's home, and that the appellant's wife was usually there.

Maintaining his innocence, the appellant testified in his own defense. The appellant testified that the children were being "coached" by their parents and his ex-wife in order to obtain the appellant's money and property. The appellant added that KB's mother had "filed a lawsuit for $250,000" against him.

At the conclusion of the proof, the jury found the appellant guilty of all three counts. After conducting a sentencing hearing, the trial court sentenced the appellant as a Range I offender to the maximum sentences for each offense: twenty-five years for each aggravated rape conviction and twelve years for the aggravated sexual battery conviction. The trial court also ordered that the sentences be served consecutively. The appellant now appeals from the convictions and the sentences.

## II. Sufficiency of the Evidence

The appellant first challenges the sufficiency of the evidence to sustain a conviction for any of the three offenses. The appellant's argument is threefold. First, the appellant contends that the victims were "coached to make the statements against him by his ex-wife and her daughters for financial reasons." Second, the appellant argues that inconsistencies in the testimony of KB and her sister "indicate[s] that they were inventing the testimony about the alleged incident." Finally, the appellant contends that the testimony of AL did not establish the element of penetration. These arguments are without merit.

■■■ A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn.1994); Tenn.R.App.P. 13(e).

### A.

■■■ We first address the appellant's contentions that the victims were "coached," and that inconsistencies in the testimony of KB and her sister indicate that they were inventing their testimony. The jury is the primary instrument of justice to determine the weight and credibility to be given to the testimony of the witnesses. *Cabbage*, 571 S.W.2d at 835. A jury verdict, supported by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983). Thus by returning a verdict of guilty, the jury rejected the appellant's contentions regarding the untruthfulness of the victims. We can find no reason to interfere with the jury's finding.

### B.

■■■ We next address the appellant's contention that the testimony of AL did not establish the element of penetration under Count One. The appellant argues that AL "testified that the defendant told her to do things to private parts, but she does (sic) not testify as to any penetration by the defendant."

Sexual penetration necessary to establish rape includes cunnilingus. Tenn.Code Ann. § 39–13–501(7) (1991). In the instant case, the trial court defined cunnilingus to the jury as "an act of sexual perversion committed by placing the mouth or tongue on or in the vagina of another." This definition is virtually identical to the definition of cunnilingus that has been approved by this court. *See State v. Michael Warren Evans*, No 02C01–9306–CC–00124, 1994 WL 59452 (Tenn.Crim. App. at Jackson, March 2, 1994), *perm. to appeal denied*, (Tenn.1994); *State v. Karl E. Vanderbilt*, No. 70, 1992 WL 69650 (Tenn. Crim.App. at Jackson, April 8, 1992), *perm. to appeal denied*, (Tenn.1992) (defining "cunnilingus" as "a sexual activity involving oral contact with the female genitals").

An examination of the record reveals the following testimony during the direct examination of AL:

Q. What is your private; what do you mean when you say that?

A. Between my legs.

Q. He had you and your brother, you say, lick each other's private?

A. He told my brother to suck mine and me to lick my brother's.

Q. Now, did he ever do anything to you with his private?

A. He told me to suck his private *and he licked mine.*

This testimony clearly establishes that the appellant performed cunnilingus on AL. Therefore, a rational juror could have found that the appellant penetrated AL.

### III. Severance

Prior to trial, the appellant moved the court to sever all counts of the indictment. In response to the appellant's motion, the trial court severed Counts Four and Five for driving under the influence and driving on a revoked license but ruled that all remaining counts (One, Two and Three) would be tried jointly.[3] The appellant contends that the trial court erred in so ruling.

In reviewing the trial court's denial of the appellant's motion to sever under Tenn.R.Crim.P. 14, this court must first determine, as a matter of law, whether the joinder of Counts One, Two, and Three were proper under Tenn.R.Crim.P. 8(b). Tenn.R.Crim.P. 8(b) permits two or more offenses to be joined in the same indictment in separate counts if the offenses "constitute parts of a common scheme or plan or if they are of the same or similar character." However, under Tenn.R.Crim.P. 14(b)(1), a defendant is entitled to severance of two or more offenses that have been joined or consolidated for trial unless (1) the offenses are part of a common scheme or plan *and* (2) the evidence of one would be admissible in the State's case-in-chief upon the trial of the other.

The first prong of Rule 14(b)(1) requires the trial court to find a common scheme or plan. A common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes. *State v. Hallock*, 875 S.W.2d 285, 289–290 (Tenn.Cr.App.1993) (citing *State v. Peacock*, 638 S.W.2d 837 (Tenn.Crim.App. 1982)). There are three categories of "common scheme or plan" evidence. These include (1) distinctive designs, or signature crimes; (2) a larger, continuing plan or conspiracy; and (3) the same transaction. N.

Cohen, *Tennessee Law of Evidence*, § 404.11 (2nd ed. 1990).

To fall within the first category of "distinctive design or signature," similar crimes committed by the defendant "are admissible to show the defendant's *modus operandi* from which it may be inferred that the defendant probably committed the nearly identical crime for which he or she is on trial." *Id.* However, the *modus operandi* must be so unique and distinctive as to be like a signature, i.e., it must be probative of the defendant's identity. *Hallock*, 875 S.W.2d at 290. To determine whether certain crimes fit into this category, "the test is not whether there was evidence that a defendant committed both crimes, but whether there was a unique method used in committing the crimes." *Young v. State*, 566 S.W.2d 895, 898 (Tenn.Crim.App.1978). *E.g., Harris v. State*, 189 Tenn. 635, 227 S.W.2d 8, 11 (1950).

The second category, "continuing plan or conspiracy," involves not the similarity between the crimes, but the common goal or purpose at which they are directed. N. Cohen, *Tennessee Law of Evidence*, § 404.11 (2nd ed. 1990). In such circumstance, the proof sought is of a working plan, operating towards the future with such force as to make probable the crime for which the defendant is on trial. *Id.* (citing WIGMORE ON EVIDENCE 249 (Chadbourn rev. 1979)). *E.g., State v. Brown*, 823 S.W.2d 576, 585 (Tenn. Crim.App.1991).

Finally, to qualify within the "same transaction category," the crimes must occur within a single criminal episode. *Hallock*, 875 S.W.2d at 290. This category allows proof of acts occurring before and after the offense at issue to be admitted to provide the trier of fact with "the full story." N. Cohen, *Tennessee Law of Evidence*, § 404.11 (2nd

---

3. At the hearing on the appellant's motion for severance, the appellant argued that Counts One, Two, and Three involved three different victims, occurred at different times, and would be highly prejudicial to the appellant if presented in the same trial. The appellant also contended that the facts of one count would not be admissible in

the trials of the others. The State responded that Counts One, Two, and Three all involved family members of the appellant, and that they involved "essentially the same period of time." In summarily ordering the three counts to be tried jointly, the trial court offered no explanation for its ruling.

ed. 1990). *E.g., State v. Payne,* 791 S.W.2d 10, 16 (Tenn.1990).

The second prong of Rule 14(b)(1) involves the admissibility of the evidence of one crime in the trial of the other. Evidence that the accused committed crimes independent of those for which he is on trial is generally inadmissible because such evidence lacks relevance and invites the finder of fact to infer guilt from propensity. Tenn.R.Evid. 404(b). However, evidence of other crimes, wrongs, or acts may be admissible for other purposes. *Id.* Tenn.R.Evid. 404(b) sets forth "conditions which must be satisfied before admitting such evidence."

▪ Therefore, for purposes of severance under Tenn.R.Crim.P. 14(b)(1), the trial court is required to hold a pre-trial hearing. *See generally State v. Bigbee,* 885 S.W.2d 797, 806 (Tenn.1994); *State v. Nichols,* 877 S.W.2d 722, 732 (Tenn.1994); *State v. West,* 844 S.W.2d 144, 150 (Tenn.1992). During this hearing, the trial court must determine that evidence of prior crimes or bad acts is relevant to a material issue other than character. *Id.* Although Tenn.R.Evid. 404(b) does not explicitly list such exceptions, as does its federal counterpart, case law has defined issues to which other crimes evidence may be relevant. Thus, evidence of other crimes may be admissible to show (1) motive; (2) intent; (3) guilty knowledge; (4) identity of the defendant; (5) absence of mistake or accident; or (6) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other.[4] *Collard v. State,* 526 S.W.2d 112, 114 (Tenn.1975). If the court determines that the evidence is relevant to some other issue, the trial court must state on the record the specific issue to which the evidence is relevant. *Bigbee,* 885 S.W.2d at 806. Finally, the trial court must conduct a balancing test weighing the probative value of such evidence against its unfair prejudicial effect. *State v. McKnight,* 900 S.W.2d 36, 51 (Tenn.Crim.App.1994), *perm. to appeal denied,* (Tenn.1995). This court in *McKnight,*

900 S.W.2d at 51, set out factors to consider when conducting this balancing test. These factors include "... the likelihood the defendant committed the other crimes, and the degree of its relevance." *Id.* The court also added that "[t]he similarity of the acts makes the probative value particularly significant." *Id.*

▪ Therefore, before two or more offenses may properly be joined under Rule 8(b) in the same indictment, Rule 14(b)(1) requires that the trial court (1) find that the offenses are part of a common scheme or plan, and (2) comply with the procedural requirements of Tenn.Rule Evid. 404(b).

## A. Counts One and Two

In the first two counts of the indictment against the appellant, the appellant was charged with the rape of AL and RL. AL and RL are sister and brother and lived in the same household as the appellant at the time the offenses occurred. The circumstances surrounding the two offenses are similar. Both offenses involved oral penetration and occurred in the appellant's home at times when the victims' grandmother was not present and the appellant was the sole caretaker of the children. Both victims are around the same age.

The similarities between these offenses are sufficient to establish a distinctive design, i.e. *modus operandi,* thus establishing a common plan or scheme. *See e.g., McKnight,* 900 S.W.2d at 52; *State v. Edwards,* 868 S.W.2d 682 (Tenn.Crim.App.1993); *State v. Wooden,* 658 S.W.2d 553 (Tenn.Crim.App.1983); *White v. State,* 533 S.W.2d 735 (Tenn.Crim. App.1975). Although there are some differences between the two offenses, it is not necessary that the two crimes be identical in every detail. *Bunch v. State,* 605 S.W.2d 227, 231 (Tenn.1980). Moreover, the similarities far outweigh these differences. Thus, the first prong of Rule 14(b)(1) is met.

▪ In order to comply with the requirements of the second prong, the trial court

---

**4.** *See State v. McKnight,* 900 S.W.2d 36, 51 (Tenn.Crim.App.1994) ("The distinctive design in the commission of a series of crimes may serve as the basis for either admitting evidence of other

crimes or having consolidated trials."). *Cf. Hallock,* 875 S.W.2d at 292 ("[T]he mere existence of a common scheme or plan is not a proper justification for admitting evidence of other crimes.")

was required to conduct a hearing to determine if evidence of one offense is relevant to a material issue in the trial of the other offense and to determine whether the probative value of such evidence outweighs any prejudicial effect. In the instant case, the trial court failed to conduct such a hearing.[5] Rather than remand for a 404(b) hearing, we elect to complete this analysis as the victims' testimony is contained in the record before us.

■■■ As we have previously determined, the evidence of the offense against AL and the offense against RL involves a common plan or scheme. As such, the evidence of each offense addresses an issue relevant to the other offense and is therefore admissible in the trial of the other. However, in a matter of first impression, we hold that the joinder of these counts would unduly prejudice the appellant at trial. The "open dated" indictment (November 1992 to February 1994), in the present case, permits the State's introduction of other unindicted sexual crimes or bad acts by the appellant in its case-in-chief. *See State v. Rickman,* 876 S.W.2d 824, 829 (Tenn.1994). Because there are two counts involving two different victims, evidence of multiple sexual offenses would be admissible under each count. Thus, the "taint" of such evidence introduced under one count would bolster the second joined offense and vice versa. Accordingly, we conclude that the probative value in the introduction of a common scheme is outweighed by the danger of unfair prejudice in the joinder of Counts One and Two. In so holding, we conclude that Counts One and Two must be severed under the facts presented.[6]

### B. Count Three

■■■ The final count of the indictment against the appellant was the aggravated sexual battery of KB. The circumstances surrounding this offense are dissimilar from the offenses in Counts One and Two. Unlike

the other two victims, KB did not live in the same household as the appellant. KB was not under the "parental supervision" of the appellant as were the other two victims. Other adults were at the residence when this offense occurred. The record indicates that the dates on which the crimes against AL and RL were committed were never identified and could have occurred at any time during a sixteen month period. In contrast, the evidence establishes that the crime against KB occurred on the date of February 7, 1994. Thus, we are unable to conclude that this offense was closely connected in time to the offenses charged in Counts One and Two. Most importantly, the unlawful sexual contact alleged in Count Three consisted of the appellant fondling the breast of KB and kissing her, a pattern of sexual misconduct wholly different from that alleged in Counts One and Two.

In *State v. Dies,* 829 S.W.2d 706 (Tenn. Crim.App.1991), we were faced with a similar situation. In *Dies,* we held:

> Although there are similarities in that both victims were near the same age, they were not both residing in the house; the acts occurred at least four months apart; and, the alleged sexual acts were not particularly similar. One victim related that the defendant had rubbed her "private parts" and on another occasion had "licked her panties." The other victim testified that the defendant "started kissing her on her forehead and playing with her middle section. We do not agree that this constituted a common scheme or plan nor that the economics of the case would prohibit a severance.

829 S.W.2d at 709.

■■■ In accordance with our holding in *Dies,* we conclude that the offense alleged in Count Three was not part of a common scheme or plan in conjunction with Counts One and Two. In complying with the requirements of 404(b), we also conclude that

---

5. Although a hearing was held as to the appellant's motion to sever, we find that the hearing complied, minimally at best, with Rule 404(b) requirements, i.e., no evidence was presented, no finding was made as to a material issue, no balancing test was completed.

6. We note that this holding does not reflect that the same result would necessarily occur in a "date specific" indictment.

the evidence elicited in support of Count Three would not be admissible in separate trials for Counts One and Two, and that the prejudicial effect of such evidence outweighs any probative value. *See State v. Burchfield,* 664 S.W.2d 284, 286 (Tenn.1984). In the present case, the testimony of KB bolstered the testimony of the other two victims. Failure to sever, under these circumstances, invited reliance upon the propensity notion. Therefore, we hold that the appellant was unduly prejudiced by the joinder of Count Three with Counts One and Two of the indictment. As a result, we must remand all three counts for new trials.

## IV. Plain Error

Before we consider the appellant's sentencing issues, we are compelled, in the interest of judicial efficiency, to discuss issues resulting from the time frames set forth in the indictment and the proof offered at trial. The indictment charges that the appellant "during a period between November 1, 1992 and February 7, 1994" committed the offense of aggravated rape against AL; that the appellant "during a period between November 1, 1992 and February 7, 1994" committed the offense of aggravated rape against RL; and that the appellant "during a period of time between July 1, 1993 and February 7, 1994" committed the offense of aggravated sexual battery against KB.

Moreover, the testimony offered at trial did not establish any particular date or event, but revealed that each of the offenses took place more than once within the indicted period of time. AL stated that, on most occasions, the appellant performed oral sex on her, and he made her perform oral sex on him. AL testified that "[o]ne time [the appellant] did it in my grandma's bathroom. And the rest of the time he did it in my cousin's room." However, AL testified that on one occasion the appellant made her and

RL perform oral sex on each other. This event occurred in the bathroom. RL testified that when his grandmother was not home, the appellant would "make me suck his private." RL stated that these acts occurred "in the bathroom and in his bedroom." Additionally, RL indicated that the appellant had committed these acts over a period of years. KB testified only as to one other incident involving the appellant. She stated that the touching "happened in February and then it happened one other time." At trial, KB could not remember exactly when the other incident occurred, but she testified that both offenses involved "messing with her breast." KB's mother testified that KB stated, "Mom this ain't the first time its happened." [7]

The general rule is that this court does not consider issues that are not raised in the trial court, however, plain error is a proper consideration for an appellate court whether properly assigned or not. *State v. Ogle,* 666 S.W.2d 58, 60 (Tenn.1984); *see also State v. Clabo,* 905 S.W.2d 197 (Tenn.Crim. App. at Knoxville, 1995). Moreover, Tenn. R.Crim.P. 52(b) states that an error affecting "the substantial rights of the accused may be noticed at any time where necessary to do substantial justice."

### A. Plain Error Review: Election of Offenses

The courts of this state have consistently held that when evidence suggests that a defendant has committed multiple sex crimes against a victim, and the crimes are charged in a single count, the court *must* require the State to elect the particular offense for which a conviction is sought. *State v. Shelton,* 851 S.W.2d 134, 136 (Tenn.1993); *State v. Brown,* 762 S.W.2d 135, 137 (Tenn. 1988); *Burlison v. State,* 501 S.W.2d 801, 804

---

7. The trial court correctly admitted this statement as corroborative testimony pursuant to the "fresh complaint doctrine." However, we find it necessary to note that, upon retrial, this statement will not be admissible as our supreme court recently abandoned the "fresh complaint doctrine" as to child victims. *See State v. Livingston,* 907 S.W.2d 392 (Tenn.1995). The supreme court in *Livingston* reasoned that "unlike the

presumption regarding adult victims, juries do not necessarily presume that children fabricate, nor do they presume that a child will complain immediately," therefore, "[t]he historic premises which supported our retention of the rule in adult victim cases simply do not support the application of the doctrine in child victim cases." *Id.*

(Tenn.1973). In fact, the "requirement of election is fundamental, immediately touching on the constitutional rights of the accused." *Shelton*, 851 S.W.2d at 137. Thus, the trial court must require the prosecution to elect offenses even absent a request from the defendant. *Burlison*, 501 S.W.2d at 804. *Burlison* set forth three reasons for the election requirement:

> [f]irst, to enable the defendant to prepare for and make his defense to the specific charge; second, to protect him from double jeopardy by individualization of the issue; and third, so that the jury's verdict may not be a matter of choice between offenses, some jurors convicting on one offense and others, another.

*Burlison*, 501 S.W.2d at 803.

■■■■ In this case, it is clear that although the indictment charged the appellant with one distinct sexual offense against each victim, the evidence suggested multiple offenses against each victim. At trial, each victim described numerous occasions on which the appellant committed unlawful acts. Under these circumstances, the court should have required the State to elect one of these incidents to rely upon for a conviction. The court's failure to do so abridged the appellant's constitutional right to a unanimous jury verdict, and therefore, also mandates a reversal of the appellant's conviction.

### B. Plain Error Review: 404(b): Prior Bad Acts

■■■■ Tennessee recognizes a narrow rule relating to the admissibility of evidence of other sex crimes. This rule admits prior sex crimes into evidence when an indictment is not time specific, and when the evidence relates to sex crimes that allegedly occurred during the time charged in the indictment. *State v. Rickman*, 876 S.W.2d 824, 829 (Tenn. 1994); *see also, State v. Shelton*, 851 S.W.2d 134, 136 (Tenn.1993); *State v. Brown*, 762 S.W.2d 135, 137 (Tenn.1988). Unlike evidence of prior crimes excluded by Tenn. R.Evid. 404(b), evidence of a prior sex crime that is necessarily included within the charge of the indictment is also necessarily relevant to the issues being tried and, therefore, is admissible. *Rickman*, 876 S.W.2d at 829. Thus, AL's, RL's, and KB's testimony relating to other sexual incidents within the indicted time period would be admissible assuming an election of offenses is made.

■■■■ The introduction of other incidents of sexual crimes occurring *within* the indicted period requires an election of offenses; likewise, the introduction of other sexual crimes *outside* the indicted period or in a "date specific" indictment requires compliance with Rule 404(b) procedures. As noted, RL testified to incidents of sexual crimes by the appellant occurring prior to November of 1992 and, thus, outside the indicted time frame. RL indicated during his testimony that the illicit acts were continuous over a period of years, occurring throughout several states including California, Texas and Tennessee. In accordance with 404(b), the trial court was required to hold a jury-out hearing to determine the admissibility of RL's assertion of bad acts occurring outside the indicted period. The record demonstrates that no hearing was held.[8] Additionally, we cannot conclude that this evidence would have been admissible as a 404(b) exception. Moreover, we conclude that RL's testimony as to these additional crimes is more prejudicial than probative. Accordingly, we hold that the trial court committed error in admitting this evidence.

### V. Sentencing Issues

Although we need not address the appellant's sentencing issues as we have determined that this case must be reversed and remanded, we elect to address errors in the sentencing court's application of enhancement factors for the purpose of retrial.

### A. Application of Enhancement Factors

■■■■ Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct.

---

8. We note that the record indicates that the appellant never objected at any time to the admissibility of such evidence.

Tenn.Code Ann. § 40–35–401(d) (1990). This presumption applies as the record demonstrates that the sentencing court properly considered relevant sentencing principles. *See State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

At the sentencing hearing, the court sentenced the appellant to the maximum penalty for each offense, ordering all offenses to run consecutively. The sentencing court found no mitigating factors, but found five enhancement factors. The court found that the evidence established that: the appellant has a "prior history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40–35–114(1) (Supp.1994); "the offense involved more than one victim," Tenn.Code Ann. § 40–35–114(3); "the personal injuries inflicted upon or the amount of damage to the property sustained by or taken from the victim was particularly great," Tenn.Code Ann. § 40–35–114(6); "the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement," Tenn.Code Ann. § 40–35–114(7); and "the defendant abused a position of public or private trust," Tenn.Code Ann. § 40–35–114(15).[9]

It is a well established principle that an enhancement factor may not be used to increase a sentence within the appropriate range unless the factor is established by the evidence. *State v. Melvin,* 913 S.W.2d 195 (Tenn.Crim.App. at Nashville, 1995); *see also State v. Raines,* 882 S.W.2d 376, 385–85 (Tenn.Crim.App.1994); *State v. Brown,* 871 S.W.2d 492, 495 (Tenn.Crim.App.1993). In the case before us, the record does not support the use of enhancement factors (3), (6), and (7).

Tenn.Code Ann. § 40–35–114(3) allows for enhancement when the offense involves more than one victim within the indicted offense. The sentencing court erroneously applied this enhancement factor, since there were separate convictions for each victim. *State v. Lambert,* 741 S.W.2d 127, 134 (Tenn.Crim.App.1987).

Tenn.Code Ann. § 40–35–114(6) provides for enhancement if the personal injuries to the victim were great. The sentencing judge found that "from reading the record ... and listening to the testimony of these young children, as well as the victim impact statements ... that the emotional trauma that has been visited upon these very young victims by this person's criminal acts and criminal nature is tremendous. These children will bear the scars in each of these cases of this man's activities for the rest of their life." The victim impact statements included in the pre-sentence report reveal that the victims were undergoing counseling and that their mothers predicted that these children would never be able to have normal relationships in the future. "Personal injury" as expressed in enhancement factor (6) encompasses emotional and psychological injuries as well as physical injuries sustained by the victim. *Melvin,* 913 S.W.2d 195 (citing *State v. Smith,* 891 S.W.2d 922 (Tenn. Crim.App.), *perm. to appeal denied,* (Tenn. 1994). However, before this factor may be applied, the State has the burden of establishing that the emotional injuries and psychological scarring are "particularly great." *Id.* In order to prove that the injuries are particularly great and/or will endure "for the rest of [the victim's] life," the State must offer expert testimony to that effect. *Id.* (quoting *State v. Sterna,* No. 01–C–019007CR00163, 1991 WL 135006 (Tenn. Crim.App. at Nashville, July 24, 1991), *perm. to appeal denied,* (Tenn. Dec. 2, 1991)).

There is little question that rape is a serious offense which is injurious to both the body and mind of the victim. Consequently, the legislature saw fit to enhance the punishment of the crime of rape when a child is involved. *State v. Embry,* 915 S.W.2d 451 (Tenn.Crim.App. at Knoxville, 1995). As the legislature has already enhanced the punishment for such offenses, in order to apply enhancement factor (6) in aggravated rape cases, the State must show that the injuries sustained by the victims in this case were greater than those which ordinarily result from this serious offense. *Melvin,* 913

---

**9.** The record indicates that neither the State nor the appellant offered any evidence at the sentencing hearing other than the trial record and the pre-sentence report.

S.W.2d 195; *State v. Salazar*, No. 02C01–9105CR00098, 1992 WL 4785 (Tenn.Crim. App. at Jackson, Jan. 15, 1992). Under the circumstances of this case, we conclude that the State has failed to show that these children suffered greater injuries than that which is ordinarily involved in such offenses.[10] Accordingly, this enhancement factor cannot be applied.

The sentencing court also applied enhancement factor (7) providing for enhancement when the offense was committed to satisfy the defendant's desire for pleasure. Tenn.Code Ann. § 40–35–114(7). In *State v. Adams*, 864 S.W.2d 31, 34–35 (Tenn.1993), our supreme court rejected the proposition that, "as a matter of law, every rape is implicitly committed for the purpose of pleasure or excitement." The supreme court noted that not all such crimes are committed for pleasure, but rather may be motivated by acts of brutality, revenge, punishment, intimidation, et. al. *Id.* Thus, even though this enhancement factor may be applied to such cases, the State has the burden of demonstrating the rape as being sexually motivated. *Id.* In the case before us, the record is again void of any showing by the State as to the particular motivation for the appellant's conduct. Absent any such proof, we conclude that this enhancement factor is inapplicable.

When determining the length of a sentence, the court must presume that the minimum sentence within the range is applicable. Tenn.Code Ann. § 40–35–210 (1990). However, if there are no mitigating factors, the court may set the sentence above the minimum in that range and may also determine the weight applicable to each enhancement factor. *Id.* From a review of the record, we conclude that the sentencing court erroneously applied enhancement factors (3), (6), and (7). However, the sentencing court was correct in its finding of enhancement factors (1) and (15). We also conclude that application of the mitigating factors was correctly denied.

Due to the elimination of three enhancement factors and the weight afforded the remaining factors, we conclude that modification of the appellant's sentences are necessary. Although academic at this point, but for purposes of retrial, we would impose sentences of twenty years for each of the aggravated rape convictions and a ten year sentence for the aggravated sexual battery conviction.

Additionally, the appellant contends that consecutive sentencing was not proper in this case. We disagree. The record reflects that the trial court properly applied consecutive sentences under Tenn.Code Ann. § 40–35–115(b)(5) (1990).[11] Therefore, this issue is without merit.

For the reasons stated herein, we reverse the appellant's convictions and remand this case for retrials consistent with this opinion.

PEAY, and BARKER, JJ., concur.

---

10. We note that at, the sentencing hearing, the State did not request nor did they argue for application of enhancement factor (6).

11. Tenn.Code Ann. § 40–35–115(b)(5) provides for consecutive sentences when

a defendant is convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or victims ...

In the present case, the fact that the appellant was the grandfather of the victims and the fact that the abuse occurred over an extended period of time serve as adequate aggravating factors to impose consecutive sentences.