IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

DECEMBER 1998 SESSION



**FILED**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9712-CC-00480 |
| Appellee, | * | FAYETTE COUNTY |
| VS. | * | Hon. Jon Kerry Blackwood, Judge |
| EDWARD L. DAVIS, | * | (Sexual battery) |
| Appellant. | * | |

**March 19, 1999**

**Cecil Crowson, Jr.**

**Appellate Court Clerk**

For Appellant:

Edward B. Johnson
Attorney
112 East Court Square
Somerville, TN  38068

For Appellee:

John Knox Walkup
Attorney General and Reporter

Marvin E. Clements, Jr.
Assistant Attorney General
Criminal Justice Division
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

Elizabeth T. Rice
District Attorney General
302 Market Street
Somerville, TN  38068

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

The defendant, Edward L. Davis, was convicted of sexual battery, a class E felony. Tenn. Code Ann. § 39-13-505. The trial court imposed a Range I sentence of one year and required the defendant to serve eighteen days in the county jail and the remainder of his sentence on intensive supervision with Corrections Management Corporation, a community based alternative. The defendant was required to perform one hundred hours of community service, abide by the terms of a behavioral contract, and pay court costs.

In this appeal of right, the defendant presents the following issues for review:

> (I) whether the evidence is sufficient to support the conviction for sexual battery;
>
> (II) whether the trial court erred by admitting prejudicial and irrelevant testimony; and
>
> (III) whether the trial court erred by refusing to charge the lesser offense of assault.

We affirm the judgment of the trial court.

On November 26, 1996, the defendant was working as a substitute teacher in a special education classroom of the Fayette County Schools. During the course of the day, a teaching assistant, Mary Grandberry, entered the classroom and saw the defendant standing next to LH,[1] the victim. The defendant had placed his hand under the victim's clothing. At trial, Ms. Grandberry testified that she had looked twice because she was so surprised before returning to her classroom. A few minutes later, she informed another teacher of the defendant's conduct. Ms.

---

[1] It is the policy of this court not to divulge the names of minor victims of sexual abuse.

Grandberry then confronted the defendant, who asked her to "drop it." She replied, "You asked me to drop this. You've got a daughter. Would you want it to happen to your daughter?" The defendant then answered, "No." Ms. Grandberry described the victim as "disturbed" after the incident.

On cross-examination, Ms. Grandberry testified that special education students are taught life skills in the classroom kitchen. A cabinet and sink are directly opposite from the doorway to the classroom kitchen. Ms. Grandberry stated that she stood in the doorway as she saw the defendant touching the victim. She testified that the defendant and victim were standing by the sink, facing one another, with the defendant's left side and the victim's right side visible to Ms. Grandberry. She recalled that the defendant's right hand was under the victim's dress touching her pubic area and denied that her view was obscured by the defendant. Ms. Grandberry explained that she did not intervene because "he know[s] the rules."

The victim, seventeen years old at the time of the offense, testified that the defendant, who had asked her to prepare coffee for him, slipped his hand under her dress and into her pantyhose, touching her pubic area.

Andrea Hamm, the victim's mother, testified that the victim had been enrolled in special education classes since kindergarten. She denied either questioning the victim about the incident or rehearsing her in preparation for trial. Ms. Hamm maintained that she had preferred that her daughter not testify and that the two only discussed the incident when the victim indicated a desire to do so. Ms. Hamm stated that the victim reads on a second or third grade level, can prepare a bowl of cereal but is not permitted to cook, and is not left at home alone. She explained that the victim could dress herself but could not wash her hair.

3

Apparently, the victim does perform some chores and cleans her room with assistance. She has an IQ of 50, placing her in the moderate range of mental retardation.

Sylvia Faye Person, a teacher of special education, had attended high school with the defendant and taught school with him at Fayette Ware High School. When she heard the allegation, she asked the defendant about the incident. His response was that he knew nothing about the claim. Ms. Person then thought she had misunderstood the allegation and returned to her classroom. When she passed the victim in the hallway, the victim, who appeared to be calm, had answered that she was fine.

The defendant, who was forty-five years of age at the time of trial, grew up in Fayette County. In 1973, he received a bachelor's degree in sociology and social work and obtained employment at a residential treatment center for children with emotional problems and physical disabilities. In 1980, he joined the military and received training as a medical lab technician. After receiving an honorable discharge, he took a job testing water at a Maryland wastewater treatment plant. Eventually, he returned to Fayette County and for the last few years has worked as a substitute teacher.

At trial, the defendant acknowledged that on the date of the incident with the victim, he had been asked to teach Mr. Givan's class, a group of severely emotionally disturbed children. The defendant explained that he had taken his class to watch a movie with Ms. Bohannan's class. He testified that he had asked the victim, who was a student in Ms. Bohannan's class, to make some coffee. He explained that he stood facing the victim near the sink, supervising her actions, and

4

that his left side was closest to the door of the main classroom. He claimed that when Ms. Grandberry looked from the doorway, he was holding the cup in his right hand in front of the victim, who was holding the coffeepot. He recalled that Ms. Grandberry said nothing and left. The defendant denied ever touching the victim's clothing or her pubic area.

Odis Cox, a school teacher who had known the defendant for thirty-five years, testified that the defendant was a "regular citizen, upright, Christian, a young man, and treated everybody fair, and honest to everybody ...." Cox, who was aware of the defendant's 1994 conviction for DUI, maintained that that incident had not changed his opinion of the defendant.

Dr. Michael Guinle, a licensed clinical psychologist, testified that he had extensive experience in determining psychological profiles. He explained that a psychological profile is a "description of a person's mental state and any pathology or mental illness" he or she might have. Dr. Guinle, who had reviewed a psychological report on the victim, stated that in his opinion, someone in the moderately retarded range is "able to be steered or coached or coerced ...." He testified that one who is moderately retarded is "very impaired," in recalling events and could have a "confabulated [memory], which just means [her recollections] can be contaminated by other things," such as dreams or they may be influenced by other people. Dr. Guinle subjected the defendant to the Minnesota Multiphasic Personality Inventory (MMPI), a test used nationwide to identify typical sex offenders. While asserting that the MMPI is ninety percent accurate in identifying sex offenders, Dr. Guinle stated that, in his opinion, "[the defendant] is functioning within the average range in terms of intelligence; that he is completely normal on all tests; and that he was truthful and honest and forthcoming, and provided a valid

5

protocol and he does not fit any known pattern for child abusers, and that it is very unlikely that he is [one]."

I

Initially, the defendant challenges the sufficiency of the convicting evidence. He argues that the trial court erred by denying his motion for judgment of acquittal and that the state failed to prove an element of the offense. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

The defendant was convicted of sexual battery, defined as the "unlawful sexual contact with a victim by the defendant or the defendant by a victim [where t]he defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless ...." Tenn. Code Ann. § 39-13-505(a)(3) (Supp. 1996). "Mentally defective" means that the person suffers from "a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of such person's conduct." Tenn. Code Ann. § 39-13-501(3). "Sexual contact" is defined as follows:

> [T]he intentional touching of the victim's ... intimate parts,
> or the intentional touching of the clothing over the

6

> immediate area of the victim's ... intimate parts, if that
> intentional touching can be reasonably construed as
> being for the purpose of sexual arousal or gratification.

Tenn. Code Ann. § 39-13-501(6).

The defendant argues that the state failed to prove that the contact was for the purpose of sexual arousal or gratification, as required by Tenn. Code Ann. § 39-13-501(6). Evidence of intent, sexual arousal or gratification can be proven circumstantially. See State v. Hayes, 899 S.W.2d 175, 180 (Tenn. Crim. App. 1995) (citing Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973)). Here, the victim testified that the defendant placed his hand under her dress and into her pantyhose, touching her pubic area. The area and nature of the touch are circumstances from which the jury could conclude that the contact was intended and for the purpose of sexual arousal or gratification. Because this court may not substitute its own inferences for those logically drawn by the jury, there was sufficient proof of sexual contact between the defendant and the victim. Proof that the victim, who was affected with moderate mental retardation, having an IQ of 50, qualified as "mentally defective" as defined by statute. Thus, the evidence is sufficient to support a conviction for sexual battery. The trial court did not err by denying the defendant's motion for judgment of acquittal.

II

Next, the defendant argues that the trial court erred by admitting irrelevant and inadmissible testimony. The state maintains that because defense counsel has failed to include citations to the record and failed to make a contemporaneous objection to the testimony at trial, the issue has been waived.

Generally, a ground has been waived when the defendant fails to

7

lodge an objection or fails to raise an issue on motion for new trial. Tenn. R. App. P. 3(e), 36(a); State v. Baker, 785 S.W.2d 132, 135 (Tenn. Crim. App. 1989); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). A failure to refer to the record may also result in waiver. Rule 10, R. Ct. Crim. App. While we agree that technically the issue is waived, we nonetheless conclude that the evidence was properly admitted.

Initially, the defendant argues that the testimony of Ms. Grandberry was impeached and that the victim was coached as to her testimony. The credibility of witnesses, however, is a question for the trier of fact. See Cabbage, 571 S.W.2d at 835. Defense counsel extensively cross-examined Ms. Grandberry and submitted expert proof that the victim was susceptible to coaching. The jury weighed and considered this evidence and, by its verdict, the jury accredited the testimony of the victim and Ms. Grandberry and rejected that of the defendant. In consequence, the jury resolved all conflicts in favor of the State's theory. Williams, 657 S.W.2d at 410. See State v. Hoyt, 928 S.W.2d 935, 942 (Tenn. Crim. App. 1995).

The defendant also contends that the trial court improperly permitted Ms. Hamm to testify that the victim had experienced "bad dreams." Defense counsel asked Ms. Hamm, "Have you talked with [the victim] about this inciden[t] on a number of occasions or how many occasions?" Ms. Hamm answered, "Right after it happened, she talked about it frequently and she would tell me she had bad dreams ...." The defendant claims that this testimony is non-responsive, prejudicial, and lacking in any probative value. We disagree. Relevant evidence means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

8

it would be without the evidence. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). If evidence is relevant to some matter actually in issue in the case on trial and its probative value is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted. Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). In our view, the testimony of Ms. Hamm was generally responsive to defense counsel's question. That Ms. Hamm vaguely described the content of these conversations was beyond the scope of the question. That the victim had experienced bad dreams after the incident was, however, probative of the effect of the incident upon the victim. We do not view the reference to "bad dreams" to have been unduly prejudicial, particularly when viewed in light of the damaging testimony of both the victim and Ms. Grandberry.

### III

The defendant maintains that the trial judge erred by refusing to instruct the jury as to the lesser offense of assault. Tenn. Code Ann. § 39-13-101. The state's position is that there was no proof of the lesser offense and, thus, the trial court did not err by refusing to charge misdemeanor assault.

The trial judge has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). There is an obligation "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn. Code Ann. § 40-18-110(a). "Pursuant to our statute, rule, and case law interpretations, defendants are entitled to jury instructions on all [lesser offenses], if the evidence would support a conviction for the offense." State v. Trusty, 919 S.W.2d 305, 311 (Tenn. 1996). Such a charge "allows the jury to consider all relevant offenses in determining the appropriate offense, if any, for conviction" and

9

"more evenly balances the rights of the defendant and the prosecution and serves the interests of justice." Id. It is only when the record is devoid of evidence to support an inference of guilt of the lesser offense that the trial court is relieved of the responsibility to charge the lesser crime. State v. Stephenson, 878 S.W.2d 530, 549-50 (Tenn. 1994); State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990).

Our supreme court has previously determined that assault is neither a lesser grade offense nor a lesser included offense of sexual battery. State v. Cleveland, 959 S.W.2d 548, 554 n.5 (Tenn. 1997). In consequence, it was not error for the trial court to refuse to instruct the jury on that offense.

Accordingly, the judgment is of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:

_____
Thomas T. Woodall, Judge

_____
John Everett Williams, Judge

10