IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 16, 2006

## STATE OF TENNESSEE v. WILLIAM ARTHUR SHELTON AKA JOHN SHELTON

**Direct Appeal from the Criminal Court for Bradley County
Nos. M-04-096-M04-103    R. Steven Bebb, Judge**

**No. E2005-02014-CCA-R3-CD - Filed November 9, 2006**

The appellant, William Arthur Shelton aka John Shelton, was convicted by a jury in the Bradley County Criminal Court of three counts of false imprisonment, two counts of vandalism, and one count of premeditated first degree murder.  He received a total effective sentence of life imprisonment in the Tennessee Department of Correction.  On appeal, the appellant challenges the trial court's denial of a motion for severance of the murder counts from the remaining counts, the trial court's exclusion of a witness's complete statement to police, and the sufficiency of the evidence.  From our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Richard Hughes, Cleveland, Tennessee, for the appellant, William Arthur Shelton.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Jerry N. Estes, District Attorney General; and William A. Reedy and Shari Young, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

In January 2004, the Bradley County Grand Jury returned a multi-count indictment charging the appellant with the especially aggravated kidnapping of Charlene Hyatt; the vandalism of Charlene Hyatt's automobile in an amount between $500 and $1000; the especially aggravated kidnapping of Brian Hyatt, Jr.; the especially aggravated kidnapping of Shera Holt; the especially aggravated kidnapping of Melissa Proctor; the especially aggravated kidnapping of Bobby Holt; the

especially aggravated kidnapping of Robin Holt; the vandalism of Sue Hyatt's automobile in an amount between $500 and $1000; and the premeditated first degree murder of Brian Hyatt.

The State's proof at trial revealed that Melissa (Missy) Proctor, who was the appellant's cousin, and her boyfriend, Robert Holt, lived at1341 Overhead Bridge Road in Cleveland with their two minor children, Robin and Bobby.[1] On the night of October 20, 2003, Proctor and her children were home, and Robert was at work. Robert's daughter, Charlene Hyatt (hereinafter "Mrs. Hyatt"), brought her two minor children, Shera Holt and Brian Hyatt, Jr., to visit. Thereafter, the appellant and his wife, Natalie Shelton (hereinafter "Mrs. Shelton"), also came to visit. The appellant repeatedly asked the whereabouts of Mrs. Hyatt's husband, Brian Hyatt. The appellant thought Brian might be there because two vehicles Brian typically drove, one of which he owned with his wife and the other his mother owned, were parked in front of Proctor's mobile home. Proctor told the appellant that Brian was still at work with Robert. The appellant said that he had been told that his wife and Brian were having an affair, "and he had come to hurt him real bad" or "mess [him] up." During the conversation, Mrs. Shelton appeared scared and was crying. The appellant was "pacing back and forth, going in and out of the trailer." He told everyone present that they must stay in the home. The appellant would occasionally check to make sure everyone remained in the home. Those inside did not feel free to leave.

Robert came home at approximately 9:00 or 9:30 p.m. The appellant was outside, pacing. Robert did not see the appellant's car. When Robert asked about the car, the appellant explained that he had hidden it at the mobile home behind Robert's. The appellant told Robert that he was going to kill Brian. The appellant vandalized Brian's vehicles, rendering them inoperable so Mrs. Hyatt could not leave. The appellant then called the house of Mrs. Hyatt's mother and stepfather, where Mrs. Hyatt and Brian were living at that time. The appellant left a message for Brian, advising that Mrs. Hyatt's car was "messed up," and Brian needed to pick her up at Robert's home. Afterward, a neighbor, Audrey Conner, and Robert talked to the appellant, attempting to calm him. The effort seemed to work. The appellant left with his wife at 11:00 or 11:30 p.m. Robert's other two daughters came by the mobile home to take Mrs. Hyatt and her children home.

The next morning, at 6:10 or 6:20 a.m., the appellant, accompanied by his wife and two children, returned to Proctor's home. The appellant said that he was waiting for Brian to arrive, believing Brian would be riding to work with Robert. The appellant again threatened to kill Brian. Robert left for work at just after 6:30 a.m., but the appellant stayed until 8:30 a.m. While there, he paced constantly across the floor and would not sit. When the appellant got ready to leave, he told Proctor, "We are going up on the hill."

The appellant went to Brian's house and beat on the kitchen door and windows. Brian got out of bed, picked up a pair of bolt cutters, and started out of the bedroom. Mrs. Hyatt told Brian to put the bolt cutters down, and he complied. Brian went into the yard, with no weapon in his

---

[1] Some of the witnesses in this case share a surname. Therefore, for clarity, we have chosen to utilize their first names. We mean no disrespect to these individuals.

hands.  The appellant was standing in the yard, and his wife was in the driveway, sitting in the driver's side of the appellant's car.

Brian asked the appellant what he was doing there.  The appellant said, "You know what I'm doing here."  The appellant hit Brian on the side of his head with a baseball bat then stabbed him in the chest.  Brian fell back into the open kitchen door.  The appellant told Mrs. Hyatt "[k]ind of in a smart aleck way" to call 911.  The appellant left when he heard sirens approaching.  Brian died as a result of his injuries.

The defense proof at trial was substantially similar to the proof adduced by the State.  The only difference was the testimony of Natalie Shelton which reflected that the appellant told her that Brian came toward him with a knife prior to the stabbing.  Mrs. Shelton was unsure of whether Brian had a weapon during the fight.  The appellant did not testify at trial.

Based upon the foregoing, the jury found the appellant guilty of first degree premeditated murder; the false imprisonment of Charlene Hyatt, Brian Hyatt, Jr., and Shera Holt; and two counts of vandalism of property in an amount less than $500.  On appeal, the appellant challenges the trial court's denial of a motion to sever the kidnapping counts from the murder count, the trial court's failure to admit Mrs. Shelton's "complete" statement to police, and the sufficiency of the evidence supporting his conviction for first degree premeditated murder.  We will address each of these issues in turn.

## II.  Analysis

### A.  Severance of Offenses

On appeal, the appellant argues that the trial court erred in denying his motion to sever the aggravated kidnapping and vandalism offenses from the murder offense.  The appellant contends that the offenses did not constitute a common scheme or plan and that, regardless, the proof of the aggravated kidnapping and vandalism offenses would be prejudicial to the appellant.

Tennessee Rule of Criminal Procedure 8(b) states that two or more offenses may be joined in the same indictment if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character.  See Tenn. R. Crim. P. 8(b)(1) and (2).  Tennessee Rule of Criminal Procedure 13(b) provides that the trial court may order severance of offenses prior to trial if such severance could be obtained on motion of a defendant or the State pursuant to Rule 14.  See Tenn. R. Crim. P. 13(b).  Rule 14(b)(1) provides that "[i]f two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others."

Our supreme court has held that "decisions to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion."  State v. Shirley, 6 S.W.3d 243, 247

(Tenn. 1999). "A holding of abuse of discretion reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999).

As we have noted, in the instant case the appellant filed a motion to sever the aggravated kidnapping and vandalism charges from the murder charge. Accordingly, we must consider the motion by the severance provisions of Rule 14(b)(1). See State v. Spicer, 12 S.W.3d 438, 443 (Tenn. 2000); see also State v. Denton, 149 S.W.3d 1, 13 (Tenn. 2004). In other words, it was within the trial court's discretion to refuse to sever the cases if the offenses were part of a common scheme or plan and if evidence of one case would be admissible in the other(s).

In examining a trial court's determination on a severance issue, the primary consideration is whether the evidence of one offense would be admissible in the trial of the other if the offenses remained severed. See Spicer, 12 S.W.3d at 445. Essentially, "any question as to whether offenses should be tried separately pursuant to Rule 14(b)(1) is 'really a question of evidentiary relevance.'" Id. (quoting Moore, 6 S.W.3d at 239). As such, the trial court must determine from the evidence presented that:

> (1) the multiple offenses constitute parts of a common scheme or plan, (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses, and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant.

Id. (citations omitted).

We note that this court has previously concluded, "A common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995), overruled on other grounds by Spicer, 12 S.W.3d at 447. Typically, common scheme or plan evidence tends to fall into one of three categories:

> (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction.

Moore, 6 S.W.3d at 240.

In the instant case, the trial court denied the appellant's motion to sever, ruling:

> [I]f in fact the state can prove the day before in the kidnapping scheme that he indicated an intent to kill the person that he killed the next day then that certainly would be relevant and part of a common

scheme or plan, and those offenses would be relevant as to his intent in the murder trial. The only question then would be the probative value of other offenses not outweighed by the prejudicial effects the admission would have on the [appellant].

. . . .

The motion to sever is overruled at this time. . . . You know, I think when people involve themselves in this kind of conduct and the issues are relevant in the homicide trial I'm not inclined to grant a severance. They put themselves in that position.

The trial court noted that it did not believe that the appellant would be unfairly prejudiced or denied a fair trial by proceeding with a joint trial.

In analyzing the trial court's denial of the motion to sever, we note that the offenses alleged, aggravated kidnapping and murder, did not relate to "signature" crimes. Additionally, we do not believe that the offenses are part of the same criminal transaction. Accordingly, denial of the appellant's motion to sever was proper only if the offenses were part of a larger, continuing plan or conspiracy.

Our supreme court has elucidated that "a larger, continuing plan or conspiracy 'involves not the similarity between the crimes, but [rather] the common goal or purpose at which they are directed.'" Denton, 149 S.W.3d at 15 (quoting Hoyt, 928 S.W.2d at 943). In other words, "[a] larger plan or conspiracy . . . contemplates crimes committed in furtherance of a plan that has a readily distinguishable goal, not simply a string of similar offenses." Id. Moreover, the plan requires "evidence that the defendant had a working plan operating towards the future such as to make probable the crime with which the defendant is charged." Id.

In the instant case, the State's theory at trial was that on the night of October 20, 2003, the appellant detained the occupants of Proctor's home, including Mrs. Hyatt and her children, in an attempt to lure the victim, Brian Hyatt, to the residence so he could kill him. The appellant repeatedly threatened the victim's life while refusing to allow anyone to leave the residence. Moreover, the appellant vandalized the victim's vehicles so Mrs. Hyatt could not leave. Then, the appellant left a message for Brian to pick up Mrs. Hyatt at Robert's home. When his plan for the night of October 20 was foiled, the appellant woke early the next morning and again sought out Brian with the stated intention of killing him. On the morning of October 21, 2003, the appellant was successful in carrying out his plan. We conclude that the foregoing facts constitute a clear example of a larger, continuing plan.

Next, we must determine whether the evidence of the aggravated kidnapping and vandalism offenses would be admissible in the murder trial and evidence of the murder offense would have been admissible in the aggravated kidnapping and vandalism trial if the cases had been severed. In

-5-

order to make this determination, we must review the standard for admitting prior acts testimony as is outlined in Tennessee Rule of Evidence 404(b).[2]

Rule 404(b) allows evidence that a defendant committed a harmful act other than the one for which he is on trial. See Neil P. Cohen, et al., Tennessee Law of Evidence, § 4.04[7][a], at 4-85 (5th ed. 2005). In connection with this issue, we note that establishing the identity of an offender is the most common basis for presenting evidence of a distinctive design. See Shirley, 6 S.W.3d at 248. However, identity is not the only basis for presenting evidence of a distinctive design. Other crimes evidence is also admissible to show, motive, intent, guilty knowledge, absence of mistake or accident, or a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other. See Hoyt, 928 S.W.2d at 944.

We agree with the trial court that the evidence of both offenses was relevant to show the appellant's motive and intent for committing the offenses. As we previously noted, the offenses against the occupants of Proctor's home and the acts of vandalism were committed by the appellant as part of his plan to lure the victim, Brian Hyatt, to his death. Therefore, the evidence against the appellant on the aggravated kidnapping and vandalism charges would be admissible in the appellant's murder trial and vice versa. See State v. Chivous Sirrell Robinson, No. E2001-00865-CCA-R3-CD, 2003 WL 649115, at *4 (Tenn. Crim. App. at Knoxville, Feb. 28, 2003); see also Denton, 149 S.W.3d at 15.

## B. Rule of Completeness

---

[2] Tenn. R. Evid. 404 provides:

(b) Other Crimes, Wrongs, or Acts. - Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

As his next issue, the appellant argues that the trial court erred in denying his motion to admit all portions of Natalie Shelton's statements to police. As part of his defense proof, the appellant called Mrs. Shelton as a witness. During direct examination, the appellant established that Mrs. Shelton gave a recorded interview to police. The proof indicated that at some point during the recording process, police stopped the interview and asked Shelton to write in her own words her recollection of events. After the completion of the written statement, police again recorded a statement given by Mrs. Shelton.

On cross-examination, the State asked Shelton about certain comments she made to police during the second recorded statement. The State submitted a transcript of this last recorded statement as an exhibit at trial. The trial court dismissed the jury for the day, and began trial again the following morning. The defense called two more witnesses then rested, and the trial court instructed the jury. After the instructions, the appellant moved the court to submit as exhibits to the jury Shelton's first recorded statement and her written statement, arguing that the rule of completeness required that the jury see not only Shelton's final recorded statement but also the first two statements. The trial court denied the motion, finding that Shelton was questioned only about her second recorded statement. On appeal, the appellant contends that based upon the rule of completeness, all of Shelton's statements should have been submitted to the jury.

We note that the record on appeal does not contain Shelton's first recorded statement or her written statement. We are unable to determine the merits of the appellant's claim without reviewing the first and second statements. Therefore, the failure to include the pertinent portions of the record on appeal results in waiver of the issue. See Tenn. R. App. P. 24(b).[3]

## C. Sufficiency of the Evidence

As his final issue, the appellant contests the sufficiency of the evidence supporting his conviction for first degree premeditated murder.[4] On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

---

[3] We note that the transcript of the motion for new trial hearing seemed to indicate that the appellant attempted to make Shelton's first recorded statement and her written statement exhibits to the motion for new trial. Upon inquiry, this court learned that the first recorded statement and the written statement were never submitted as exhibits at trial. We caution that it is the appellant's burden to ensure that the record on appeal is complete; therefore, counsel should not rely on this court's largesse to ensure that the record is sufficient for a review of the appellant's complaints.

[4] The appellant does not challenge the sufficiency of the evidence supporting his false imprisonment or vandalism convictions.

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In order to obtain the appellant's conviction for first degree premeditated murder, the State was required to prove, beyond a reasonable doubt, that the appellant committed the "premeditated and intentional killing of [the victim]." Tenn. Code Ann. § 39-13-202(a)(1) (2003). Premeditation "is an act done after the exercise of reflection and judgment" and "means that the intent to kill must have been formed prior to the act itself. [However,] [i]t is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time." Id. at (d). Although there is no concrete test for determining the existence of premeditation, Tennessee courts have relied upon certain circumstances to infer premeditation. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998). Specifically, the following factors have been used to support a jury's inference of premeditation: (1) the appellant's prior relationship to the victim which might suggest a motive for the killing; (2) the appellant's declarations of intent to kill; (3) the appellant's planning activities before the killing; (4) the manner of the killing, including the appellant's using a deadly weapon upon an unarmed victim, killing the victim while the victim is retreating or attempting escape, or killing the victim in a particularly cruel manner; (5) the appellant's demeanor before and after the killing, including a calm demeanor immediately after the killing. See Pike, 978 S.W.2d at 914-915; State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997).

In the instant case, numerous witnesses testified that the appellant repeatedly threatened to kill Brian because he believed Brian had been having an affair with the appellant's wife. The night prior to the murder, the appellant attempted to lure Brian to Proctor's residence by vandalizing Mrs. Hyatt's car then calling to say that Mrs. Hyatt wanted Brian to pick her up at the Proctor's home. Unsuccessful in that attempt, the appellant then hunted Brian down the next morning, still threatening to kill him. The appellant confronted Brian about the affair. At trial, Mrs. Hyatt testified that Brian went into the confrontation unarmed. The appellant struck Brian in the head with a baseball bat before stabbing him with a knife. Brian died as a result of the injuries inflicted by the appellant. The proof indicates that the appellant went to Brian's house armed in order to kill him. We conclude that the proof amply supports the conviction for first degree premeditated murder.

### III.  Conclusion

Finding no reversible error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE